RUSSELL *v.* WALL WIRE PRODUCTS COMPANY.

1. INJUNCTION—DISCLOSURE OF TRADE SECRET.
   Inventor, claiming defendant had misappropriated his trade secret in the manufacture of an article and seeking an accounting and injunction must establish a disclosure in confidence to the defendant, of a trade secret, or a pattern or device partaking of the nature thereof, and the wrongful misappropriation of such secret by defendant to the plaintiff's damage, the essence of the wrong being the breach of confidence, the betrayal of the trust placed in the recipient.

2. WORDS AND PHRASES—INDUSTRIAL STACKING BASKET.
   An industrial stacking basket is a basket used to contain industrial parts, so designed that one basket may be stacked on another without damage to the contents and so locked in place that a large pile thereof will maintain stability as a unit.

3. PATENTS—EVIDENCE OF VALIDITY.
   A patent issued is prima facie evidence of the validity of the patent.

4. INJUNCTION—TRADE SECRET—COMMON KNOWLEDGE.
   The novelty and invention required in a suit for accounting, enforcement of royalties and injunctive relief as to a trade secret is not the same as is required for patentability, as equitable protection is given merely against breach after learning about and using another's product, but the law does not protect knowledge so general as to be common property in the trade.

5. SAME—TRADE SECRET—COMMON KNOWLEDGE.
   There is no legally recognizable trade secret in an idea that was well known or readily ascertainable.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 28 Am Jur, Injunctions § 110.
[3] 40 Am Jur, Patents § 119 *et seq.*

6. SAME—INDUSTRIAL STACKING BASKETS—PATENTS—PRIOR ART.

Evidence presented in suit involving the alleged stealing of plaintiff's invention relative to an industrial stacking basket *held,* to show the prominent and distinguishing and patented feature had not been used by defendant in the manufacture of baskets and that plaintiff had not established anything novel or new in the body of the basket other than what was known in the prior art.

Appeal from Wayne; Culehan (Miles N.), J. Submitted April 11, 1956. (Docket No. 64, Calendar No. 46,805.) Decided September 4, 1956.

Bill by George L. Russell against Wall Wire Products Company, a corporation, for accounting, enforcement of royalties and injunctive relief in connection with alleged breach of trust in the appropriation of trade secrets and patentable rights. Following death of Russell, executrix substituted as party plaintiff. Bill dismissed. Plaintiff appeals. Affirmed.

*R. Gerveys Grylls* and *Ellis C. Wood,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

SMITH, J. This is not a complicated case. If it seems so it is because we must undertake certain technical descriptions which are difficult to follow without careful examination of the devices themselves, and the patents relating thereto, which were made available to the Court, as well as the trial court.

In essence this is a case of alleged stealing, not the kind of stealing condemned in the criminal code, but the gentler kind that is called the appropriation and use of another's secret. This is what happened:

The plaintiff (who died after commencement of suit, but who will be referred to herein, for purposes

of simplicity, as though still alive) was a part-time inventor, manufacturer, and distributor. As an employee of the Midwest Wire Products Company he served as a distributor of industrial stacking baskets, which, as will be more fully explained in some detail, are baskets in which parts may be conveyed or processed, and which may be placed one upon another without damage to the contents thereof. After leaving Midwest he invented a new industrial stacking basket which he advertised (with a picture of a type thereof) and in which he sought, unsuccessfully, to interest several companies as a buyer or licensee thereof. It was his efforts to interest defendant in his basket that led to this suit. Learning that Borg-Warner had requested bids on a large amount of industrial baskets, plaintiff called Mr. E. L. Russell, the vice-president and sales manager of defendant, and arranged an interview, which was held on January 20, 1950. It is plaintiff's claim that at this time, under a pledge of secrecy, he disclosed all details of a unique and novel basket of his invention to officials of the defendant, furnishing sketches, samples, and photographs thereof, making such disclosures without the protection of a license or other agreement solely because of the time limitations imposed by the Borg-Warner bid requirements. "We haven't got the time, we've got to settle this thing at once." (It should be interjected that defendant's version of this interview is framed in terms of markedly variant conclusions: That Messrs. Russell and Malone [president of defendant] were strangers on January 20, 1950, discussing a business deal for the first time. The meeting was not friendly; it was not an atmosphere conducive to confidential disclosure. The defendant was not Russell's agent, trustee, guardian or in any other sense a fiduciary. It did not solicit his services or ask him to call. It knew at least as much about the wire basket manu-

facturing business as he did. And, finally, that there is no evidence that Russell possessed any special skill or taught the defendant anything.)

At any rate, plaintiff's basket was discussed, as were possible licensing and sales agreements. It was also agreed that plaintiff would make the trip to Borg-Warner, at Muncie, Indiana, with defendant's officials in an attempt to get an order from such company and would demonstrate to them his basket. This he did. The trip, however, was fruitless. No order was obtained.

The matter of sales and licensing agreements having been raised at this time, it may be well to dispose of them, at the expense of the chronology involved. It is not necessary that we review the offers made and rejected, the counteroffers suggested and described. As the trial court observed "The testimony indicates considerable difference as to what they all discussed, but the end result was that no complete meeting of the minds was reached and that no signed agreement resulted." It was defendant's position that an oral agreement had been reached with plaintiff "for 5% on a general open sales agreement. I had incorporated 3 companies. One was the General Electric Company, the second was Ford at Cincinnati, and the third was Warner Gear at Muncie, Indiana. Those are the only 3 companies which we had that verbal agreement on." It was claimed to be pursuant to this alleged agreement (which plaintiff denies making), for a 5% sales commission for 1 year on basket orders "whether they were to our design or to his design," that defendant mailed plaintiff commission checks on baskets later sold to General Electric. As to a licensing agreement, the final steps were taken late in 1950. Again, without tracing the intermediate steps, in the words of the trial court:

"In October, 1950, Mr. Edgar Reitz, then attorney for plaintiff, prepared a license agreement, exhibit 15, and sent it to the defendant. In the letter of transmittal he stated he had prepared it in accordance with his understanding of the conversations and discussions that had previously been had between the parties. This draft of a license agreement submitted to defendant, the defendant refused to execute, and terminated any and all negotiations between the parties."

It is plaintiff's testimony that he learned in July of 1950, several months after the Muncie trip, that defendant was obtaining orders "for this type of basket" from the General Electric Company. Plaintiff asserts that this basket embodies a form of plaintiff's invention, disclosed, as above related, under a pledge of confidence. The defendant, on the contrary, asserts that its baskets do not embody the so-called Russell invention, but rather follow the teachings of the Spear patent, which were in the public domain, by expiration of patent, in August, 1950. Thus the controlling issue is framed. The trial court found for defendant and the case comes to us on a general appeal.

It is essential to recovery upon plaintiff's theory that he establish a disclosure in confidence, to the defendant, of a trade secret, or a pattern or device partaking of the nature thereof, and the wrongful misappropriation of such secret by defendant to the plaintiff's damage. The essence of the wrong is the breach of confidence, the betrayal of the trust placed in the recipient. As phrased in 4 Restatement, Torts, § 757, p 4:

"The theory that has prevailed is that the protection is afforded only by a general duty of good faith and that the liability rests upon breach of this duty; that is, breach of contract, abuse of confidence or

impropriety in the method of ascertaining the secret."

Obviously, however, before there can be the betrayal of anything in the nature of a trade secret by its misappropriation, there must be a secret, and here it is that we find the core of the controversy before us. The plaintiff insists that he invented a new industrial stacking basket. A stacking basket, as was noted, is a basket used to contain industrial parts, so designed that one basket may be "stacked" on another without damage to the contents, and so locked in place that a large pile thereof will maintain stability as a unit. The Spear patent is an example thereof:

"The Spear patent number to which I refer is 1,922,605 and that patent issued on August 15, 1933.

"It illustrates a basket having an upper frame and a lower frame and side members and bottom members which will hold whatever you want to put in the basket. The particular material of which the basket is made is of no particular significance here. It might be made of wire mesh or sheet metal or wires. The patent itself illustrates the side of a basket and the bottom being of sheet metal.

"The basket is provided with a handle at each end, which is affixed to the bottom frame member and to the top frame member, and it slopes upwardly and projects above the upper frame. There is one at each end. The handles are so arranged on the basket that when one basket is placed upon the other, the handles interlock to prevent shifting of the basket in both directions, both laterally and longitudinally. The lower handle, that is, the upper part of it, is received within—nests within the lower part of the handle of the upper basket so as to prevent the upper basket from shifting laterally relative to the lower basket. The handle of the lower basket engages the bottom frame of the upper basket to prevent longitudinal shifting of the upper basket.

"This handle stacking arrangement of the Spear patent clearly illustrates that the use of handles which interlock to prevent both lateral and longitudinal shifting of the baskets one upon the other, was well known to the art at least as far back as 1933, when this Spear patent issued."

Defendant, as early as 1940 or 1941 manufactured a basket, described by patent counsel as follows:

"I would now like to refer to defendant's exhibit L, which shows a basket structure that was made by the defendant. This basket has sheet metal members which form the sides and the ends. The bottom edges of the sheet metal members form runners. At the ends of the basket—at each end of the basket there is a sheet metal handle which projects upwards at the side of the basket and includes a bar that extends transversely of the basket at the end. Now this handle, in effect, forms a continuation of the runners. While it is made from a separate piece of metal from the sides of the basket, it is welded to the sides of the basket and is integral with it; and this handle projects upwardly so as to form a seat for supporting and locating another basket of the same kind.

"Exhibit L illustrates the stacking relationship of the parts of the 2 baskets and shows that when 2 of these baskets are stacked one upon the other, the upper extension of the handle of the lower basket to which I am now referring will receive the bottom corners of the upper basket, thereby serving as a locating means for the upper basket on the lower basket; and these corners which are formed by the handles will prevent the longitudinal shifting of the upper basket on the lower basket as well as lateral shifting of the upper basket on the lower basket."

The relationship between the Spear basket (exhibit O), the basket manufactured by defendant (exhibit L), and another type in common use (Geralds patent, exhibit 1) is described in the following terms:

"While there is some difference in appearance between the basket structure shown in Geralds patent, exhibit 1, and defendant's exhibit L, they both embody substantially the same handle stacking arrangement. That is, in exhibit L, as in Geralds, the handle of the lower basket is made so as to co-operate with the parts which form the handle of the upper basket to interlock, so that when the upper basket is seated upon the lower basket, longitudinal as well as lateral shifting movement of the upper basket will be prevented. The similarity is such that the manufacture of this present basket, exhibit L, would be an encroachment upon the patent of Geralds, except for the fact that this exhibit L was produced prior to the date of the Geralds patent, and, hence, therefore is not an infringement but is an anticipation.

"Time is a matter of great significance with respect to the matter of infringment and, in general, under the law, an inventor is not entitled to claim or cover in his patent anything which preceded his invention or which was in public use more than a year before his application for a patent was filed.

"But exhibit L does illustrate essentially the same kind of handle stacking arrangement as is illustrated in the Geralds patent. The fact that Geralds patent is made entirely out of wire rod is quite immaterial to the handle stacking principle.

"And with respect to this exhibit L, and also with respect to exhibit O, in preventing longitudinal shifting of the baskets, the handles of the lower basket engage a part of the frame of the upper basket so as to prevent longitudinal shifting. That is true in exhibit O; that is true in exhibit L. The handle, which is the end piece here, engages the corners of the end parts of the upper basket to prevent longitudinal shifting of the 2 baskets."

It is against this partial background of the prior art that we consider plaintiff's assertion that he

"invented a new industrial stacking basket, which did not infringe the Geralds patent but which stacked with the Geralds basket, thus allowing sales to be made to customers who were using the Geralds basket.

"Plaintiff's basket was superior to the Geralds basket in the facility of placing one basket upon another, in resistance to damage, in ease of repair, and in simplification of design. Due to the absence of complicated bends in the handle, it was cheaper to make than Geralds'. Since the handles on plaintiff's basket were vertical, it occupied less room in storage than the Geralds'.

"Plaintiff's concept was expressed in several forms. In one form the locking of the baskets together was accomplished by placing a flat bar or plate across the handle on the lower portion thereof, so that the upper part of the handle of a basket beneath would fit behind such horizontal piece at each end, thus preventing longitudinal movement of one basket with respect to the other. In another form this horizontal piece was omitted and the handle of a lower basket was positioned tangent to the outside of a transverse bottom-end member of the frame of an upper basket at each end of the basket, thus preventing longitudinal movement. In both forms, lateral movement was controlled by fitting the upper part of the handle of a lower basket between the lower ends of the handle of the upper basket (the top 2 baskets in figure 6 of exhibit 2 show both forms of interlocking). The first form was preferred by plaintiff since the plate provided a more positive interlock, aided in positioning one basket on another, and furnished a place for identification marks."

A patent was issued to plaintiff on July 21, 1953, on his form of basket which, it is noted, is prima facie (although merely prima facie) evidence of its validity.

With respect to plaintiff's claims of novelty and invention, it is the position of the defendant that the "Russell basket offers no real advance over well-known prior art. G. L. Russell had sold wire baskets for Midwest and others for years and in his deposition he admitted knowledge of all relevant patents. He was an experienced old operator and his 'invention' amounts to nothing more than the Midwest basket with a 'new look'—a crossbar producing no functional difference and no significant improvement."

It is, further, the defendant's position that, with respect to any alternate form without the horizontal bar (no baskets sold by defendant incorporated the flat strip or horizontal member), plaintiff's alleged invention exemplified merely "well-known prior art."

With patent validity, or lack thereof, we are not concerned. This is not a patent case. As was said in *International Industries* v. *Warren Petroleum Corp.*, 99 F Supp 907, 914:

"One point must be kept in focus: the novelty and invention required in this type of case is not the same as is required for patentability. Equitable protection is given merely against breach after learning about and using another's product. The distinction between novelty for patent purposes and novelty for the purpose of a trade secret is supported by the authorities."

It is clear that although "for this limited protection it is not appropriate to require also the kind of novelty and invention which is a requisite of patentability" (4 Restatement, Torts, § 757, p 7), nevertheless, the law does not protect knowledge so general as to be common property in the trade. Ellis on Trade Secrets, § 244, p 330, states the principle with accuracy in these terms:

"Where the idea was well known or readily ascertainable, the courts will rule that there is no legally recognizable trade secret. In other words, the discloser must treat the recipient of the disclosure equitably. That means he cannot take advantage of the recipient's ignorance of facts well known or readily ascertainable."

In the case before us, then, did plaintiff's disclosures to the defendant place the latter in the possession of information in the nature of a trade "secret" respecting plaintiff's stacking basket? If so, he must respect the secrecy imposed. If not, plaintiff cannot thrust upon him an unwanted fiduciary status and thus deprive him, except upon levy of toll, of the freedom of action enjoyed by his competitors.

As noted, we have been favored, through diligence of counsel, as was the trial court, with samples of many of the baskets, and with photographs, and patent applications for others. It is obvious that all have certain elements in common, handles, frames, and runners. It is equally obvious that in all handle stacking baskets, including both the Russell basket and the basket sold by defendant to General Electric, the handles prevent the lateral and longitudinal shifting of baskets in the stack. But it is not enough, to impose liability upon the defendant, that plaintiff show defendant's baskets to have certain elements in common with the Russell basket. As was held by the trial court:

"It is conceded by both parties to this action that the baskets manufactured by the defendant and the plaintiff's baskets have certain things in common, as do all wire stacking baskets on the present market. It appears to the court, from the testimony and from observing the exhibits produced in this court, that there is nothing new about runners on the bottom of baskets curved upwards to form a handle;

nor is there anything new about a handle locking device which prevents lateral and longitudinal movement; nor is there anything new or beneficial about having the handles in the same vertical plane; nor is there anything new in having the handles of the lower basket fit inside the handles of the upper basket."

We agree with plaintiff that the flat strip, or horizontal bar employed by him was "a very prominent and distinguishing and patented feature," but the basket sold by defendant to General Electric did not embody such feature, and without it we find nothing not in well-known prior art.

Upon all of the evidence, and a review of plaintiff's patent and all claims made therein, and therefor, we are constrained to agree with that portion of the trial court's opinion in which it is stated:

"In *New York Scaffolding Co.* v. *Liebel-Binney Construction Co.*, 254 US 24 (41 S Ct 18, 65 L ed 112) it is held that mere mechanical changes easy to discern and make and incidental to the main idea disclosed in the prior art, are not entitled to protection, and it appears that could have happened in this case, which gives rise to plaintiff's claim, particularly in view of the fact that the defendant has not used the transverse bar which the plaintiff claims is novel. If there are any features in connection with the Russell patent which the defendant is using other than the bar, it has not been established by the testimony in this case to such an extent that the court can find the defendant used the same, and it has not been established there was anything novel or new in the body of the basket other than what was known in the prior art."

Under the view we have taken of the situation, such cases as *Hoeltke* v. *C. M. Kemp Manfg. Co.* (CCA), 80 F2d 912, 915, 921, involving the misappropriation of "a valuable improvement in the art" are

not in point and will not be discussed.   Similarly, other questions raised and argued by counsel, including confidential relationship and prior and subsequent disclosures, are not controlling hereof.

Affirmed.   Costs to appellee.

DETHMERS, C. J., and SHARPE, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

EDWARDS, J., took no part in the decision of this case.