FOLLMER, RUDZEWICZ & COMPANY, PC v KOSCO

NOLTA-QUAIL-SAUER AND ASSOCIATES v ROCHE

Docket Nos. 68111, 68117. Argued April 5, 1983 (Calendar Nos. 2, 3).
—Decided December 28, 1984. Released January 17, 1985.

Follmer, Rudzewicz & Company, P.C., brought an action in the
Oakland Circuit Court against Gerald M. Kosco, an accountant
and former employer of the plaintiff, seeking to enforce an
agreement that provided that Kosco would compensate Follmer
for services rendered to former clients of Follmer within a
specified period following termination of his employment. The
court, Robert L. Templin, J., granted the plaintiff's motion for
partial summary judgment, holding that the agreement was
not a statutorily proscribed contract not to engage in business,
that the provision for compensation was neither unreasonable
nor a common-law restraint of trade, and that the provision set
forth an agreed valuation and not liquidated damages or a
penalty. The Court of Appeals, V. J. Brennan, P.J., and Bron-
son and Bashara, JJ., affirmed in an unpublished opinion per
curiam (Docket No. 46626). The defendant appeals.

Nolta-Quail-Sauer and Associates and Mattingly-Chew & Associ-
ates, Inc., brought an action in the Oakland Circuit Court
against Patrick J. Roche, an insurance agent and former em-
ployee of the plaintiffs, and Independent Agencies, Inc., a
subsequent employer of Roche, seeking to enforce a similar
agreement to compensate the former employer. The court,
George LaPlata, J., granted the plaintiffs' motion for summary
judgment, holding that the agreement was not illegal or con-
trary to public policy. The Court of Appeals, V. J. Brennan,
P.J., and N. J. Kaufman and Borradaile, JJ., reversed in an
unpublished opinion per curiam, holding the clause that the
plaintiffs sought to enforce to be proscribed by statute and void

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 53 Am Jur 2d, Master and Servant §§ 104, 106.

Proper measure and elements of damages for misappropriation of
trade secret. 11 ALR4th 12.

as against public policy (Docket No. 52377). The plaintiffs appeal.

In a unanimous opinion by Justice Levin, the Supreme Court *held:*

The provisions for compensation of the former employers in these cases did not violate the statutory proscription against contracts not to engage in business.

1. The contractual provisions challenged in these cases sought to protect the plaintiffs from the use by their employees of information acquired in the course of their employment. While an employee is entitled to the unrestricted use of general information acquired during the course of his employment or information generally known in the trade or readily ascertainable, confidential information, including information regarding customers, is property of the employer and may be protected by contract. Even in the absence of a contract, an employee has a duty not to use or disclose confidential information acquired in the course of his employment. An employee who possesses confidential information regarding a client is in a position to exploit that information for the purpose of obtaining the patronage of the client after leaving his employer's service. In view of the risks presented by an employee's knowledge of confidential customer information, and the perceived unfairness of allowing the employee to gain a competitive advantage by using it, an employer may protect himself from the unauthorized use of such confidential information by obtaining an agreement that, in the event the employee obtains the patronage of former clients, he will be obliged to pay the employer according to an agreed formula. An employer is not, however, entitled to enforce a contractual provision which would require an employee to pay for using information labelled confidential which is not in fact confidential. Accordingly, in each case, a determination must be made whether the employee has in fact had access to confidential information which provides him with an unusual opportunity to obtain the patronage of particular clients of his former employer.

2. Agreements not to engage in business are illegal and void as against public policy. However, an agreement requiring an employee to pay for using confidential information in obtaining the patronage of his employer's customers does not violate the statutory proscription. To the extent such an agreement provides reasonable protection for the confidential information of the employer, it does not violate the statute and is enforceable. To the extent it goes beyond what is reasonably necessary for the protection of confidential information, it is unenforceable.

Courts must scrutinize such agreements and enforce them only to the extent they are reasonable. In determining whether the provisions of such an agreement are reasonable, courts must consider three interests: the public interest, the former employee's interest in continued employment, and the interest of the employer. Of particular importance is the client's interest in being free to form business relationships with whomever he pleases. An agreement that unduly limits a former employee's freedom to go into business for himself or another, or extracts an excessive price for the privilege of doing so, is unreasonable and hence unenforceable. A court may, however, enforce such a contractual provision to the extent that it is reasonable by substituting a reasonable amount for the amount provided in the agreement. Because no such determination was made in these cases, they must be remanded for determination of the reasonableness of the contractural provisions.

*Follmer,* affirmed.

*Nolta-Quail-Sauer,* reversed.

1. MASTER AND SERVANT — FORMER EMPLOYEES — CONFIDENTIAL INFORMATION.

An employee is entitled to the unrestricted use of general information acquired during the course of employment or information generally known in the trade or readily ascertainable; however, confidential information, including information regarding customers, is property of the employer and may be protected by contract.

2. MASTER AND SERVANT — FORMER EMPLOYEES — CONFIDENTIAL INFORMATION — COMPENSATION OF EMPLOYERS.

An employer may seek protection from the unauthorized use of confidential information by a former employee by obtaining an agreement that, in the event the employee leaves the employment and obtains the patronage of the employer's clients, the employer is to be compensated by the employee according to an agreed formula; where a former employee seeks to challenge such an agreement, a determination must be made in each case whether the employee has in fact had access to confidential information which provides an unusual opportunity to obtain the patronage of particular clients of the former employer.

3. MASTER AND SERVANT — FORMER EMPLOYEES — CONFIDENTIAL INFORMATION — COMPENSATION OF EMPLOYERS.

Agreements not to engage in business are illegal and void as

against public policy; however, an agreement requiring an employee to pay a former employer for the use of confidential information learned in the course of employment to obtain the patronage of the employer's customers, to the extent that it provides reasonable protection for the confidential information of the employer without extracting an excessive price, is enforceable (MCL 445.761; MSA 28.61).

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *James M. Wienner),* for plaintiff Follmer, Rudzewicz & Company, P.C.

*Simon, Deitch, Siefman, Tucker & Friedman, P.C.* (by *Jay N. Siefman* and *Stephen P. Ormond),* for defendant Kosco.

*Honigman, Miller, Schwartz & Cohn* (by *Herschel P. Fink)* for plaintiffs Nolta-Quail-Sauer and Associates and Mattingly-Chew & Associates, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen P.C.* (by *Michael T. Lynch),* for defendants Roche and Independent Agencies, Inc.

LEVIN, J. In these cases, consolidated on appeal, the plaintiffs, who were employers of the defendants, seek to enforce against the defendants the employee's agreement to compensate his employer if, within a given period of time after termination of employment, the employee provided services for a client of his employer.

Defendant Kosco is an accountant. Defendant Roche is an insurance agent. Defendant Independent Agencies, Inc., is a Michigan corporation engaged in the insurance business. Both Kosco and Roche admit they provided services for clients of their former employers.

The contracts of employment[1] provided that the employee would be deemed to have agreed to purchase from his employer the goodwill or business of the employer in respect to a client or customer of the employer to whom the terminated employee rendered service within three years, in *Follmer,* or five years, in *Nolta-Quail-Sauer,* following termination of employment for a purchase price determined in accordance with a formula set forth in the agreement. The defendants claim that those contractual provisions violate the statute providing that

"[a]ll agreements and contracts by which any person, copartnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are

---

[1] The agreement in *Follmer* provides in part:

"If, at any time within three (3) years after the termination or expiration hereof, Employee directly or indirectly services any client of Employer, he shall immediately purchase from Employer the goodwill associated with such client. In view of the difficulty in evaluating goodwill, it is hereby agreed that the price of said goodwill shall be measured by the billable time spent by Employer and/or his employees in servicing such client during the 12-month period immediately preceding the date of termination or expiration extended at the billing rates in effect as of such date, but in no event, less than Two Thousand ($2,000.00) Dollars for each such client. It is mutually agreed that this amount will be paid by the Employee to the Employer over a five (5) year period of time with 20% down and the balance in sixty equal payments, including interest at 8-1/2% per annum."

The agreement in *Nolta-Quail-Sauer* provides in part:

"5. In the event of termination of Employee's employment for any reason, if Employee shall, within a period of five (5) years following the termination of his employment with the Company, directly or indirectly provide insurance services for any customer of the Company, Employee shall be deemed to have elected to purchase the insurance business with respect to such customer from the Company, and upon demand, shall pay to the Company in cash an amount equal to three (3) times the first year's insurance sales commission payable with respect to any insurance policy purchased by such customer in connection with insurance services rendered by Employee. This provision shall not be deemed a waiver of any rights of the Company against Employee for breach of any provision of this Agreement."

hereby declared to be against public policy and illegal and void." MCL 445.761; MSA 28.61.

In *Follmer,* the circuit court denied defendant's motion for summary judgment and granted plaintiff's motion for partial summary judgment, holding that the contractual provision did not violate the statute, that the provision was neither unreasonable nor an unreasonable restraint of trade under common-law standards, and that the provision set forth an agreed valuation and not liquidated damages or a penalty.

The Court of Appeals affirmed, holding that the challenged provision did not prevent the defendant "from engaging in his chosen profession" nor "from openly and notoriously competing with plaintiff." Although the provision for compensation will discourage defendant from acquiring plaintiff's clients, that is permissible under the statute. The covenant does not violate the common law as an unreasonable restraint of trade, and the "damage figures are not a penalty, but an agreed upon valuation of damages."[2]

---

[2] On appeal to this Court, defendants argue that the contractual provision violates the statute, drawing a parallel between this case and *Bernstein, Bernstein, Wile & Gordon v Ross,* 22 Mich App 117; 177 NW2d 193 (1970). Defendant suggests that the practical effect of the agreement is to prohibit him from providing services for any of Follmer's clients, because of the amounts of money that he must pay under the contract. Defendant argues that, although he is free to provide services for other clients and other accounts, the agreement is still a partial restraint of trade and as such violates the statute. Defendant submits that it will be difficult for him to survive on his own without the benefit of his established client contacts.

Defendant further argues that assuming that the plaintiff has a property interest, the agreement could have been drafted more narrowly to protect only trade secrets, including customer lists. A more rational payment schedule could have been provided. Thus, the agreement extracts more than is necessary to protect plaintiff's interests. Defendant argues that the $2,000 minimum payment imposed an undue hardship upon him because it effectively prohibits him from practicing on his own, and that the agreement injures the public and the clients who have decided to employ his services.

In *Nolta-Quail-Sauer,* the circuit court granted plaintiffs' motion for summary judgment saying that "the subject agreement as sought to be enforced under Count V is not illegal or contrary to public policy * * *." The court denied defendants' motion for summary judgment. The Court of Appeals rejected defendants' argument that the agreement was without adequate consideration, but held that the clause which plaintiffs sought to enforce was proscribed by the statute and void as against public policy.[3]

Defendant submits that summary judgment should not have been granted because the agreement's reasonableness was a question of fact and that the agreement extracts a penalty and not fair liquidated damages because it disregards the principle of just compensation in requiring defendant to pay the same amount of money without regard to whether there was solicitation.

Plaintiff answers that defendant is not prohibited from competing and that nothing in the agreement prevents or limits him from doing so in whatever manner he chooses. The covenant in question is merely a contractual agreement of purchase and sale. Accounting practices are frequently bought and sold. Defendant's obligation did not arise because plaintiff required him to purchase anything, but because defendant freely elected to represent plaintiff's former clients. The terms of the agreement, providing for a 20% down payment and payment in five yearly installments at 8-1/2% interest are reasonable.

The agreement, plaintiff argues, does not violate the statute, because defendant has not agreed "not to engage in any avocation," etc. Agreements have been upheld which far more substantially discourage competition in *Couch v Administrative Committee of Difco Laboratories, Inc,* 44 Mich App 44; 205 NW2d 24 (1972), *Woodward v Cadillac Overall Supply Co,* 396 Mich 379; 240 NW2d 710 (1976), *Tweddle v Tweddle Litho Co,* 80 Mich App 418; 264 NW2d 9 (1978), and *Bannert v American Can Co,* 525 F2d 104 (CA 6, 1975), *cert den* 426 US 942 (1976), *reh den* 429 US 874 (1976). This is a far more compelling case for the application of those principles, because defendant forfeits nothing, and cannot be restrained from representing anyone. *Bernstein* and *Stoia v Miskinis,* 298 Mich 105; 298 NW 469 (1941), relied on by defendant, involved covenants not to compete, and as such are distinguishable.

Plaintiff argues that the agreement is not unreasonable at common law because defendant has not "contracted himself out of a trade" and the agreement does not "destroy competition and thereby create [a monopoly]."

Finally, plaintiff argues that the agreement does not set forth a penalty or liquidated damages, but rather an agreed valuation.

[3] On appeal to this Court, plaintiff argues that the "purchase of

business" provision is not a penalty imposed against Roche for competing with his former employer, but rather is fair and agreed compensation for the loss to plaintiff of its property—particularly customers and confidential information identifying those customers. Plaintiff argues that the agreement does not prevent Roche from competing with plaintiff in the insurance business. If it deters Roche from competing, it does so no more than the provisions approved in the previously mentioned cases.

Plaintiff stresses the investment that insurance companies make in building their businesses and developing customer goodwill, states that it guards its lists of customers and information concerning the customers' insurance needs, expiration dates of policies, and premiums charged, and shared that information with Roche under a promise of confidentiality. Plaintiff emphasizes that Roche was encouraged to develop client contacts, was reimbursed for the reasonable costs of client development, and that he was supported in this endeavor by advertising at the company's expense. Plaintiff notes that Roche acknowledged in his deposition that information concerning "expirations" provides an agent with a definite advantage. Plaintiff argues that the formula agreed upon for valuing the goodwill sold was reasonable and "not inconsistent with industry practice."

Plaintiff argues that the purchase price set forth in the employment agreement was neither a penalty nor a forfeiture, but an agreed upon valuation for the value of the property. Such an agreed upon valuation is permissible where it is difficult to ascertain or estimate the actual damages for breach of contract. The value agreed upon is not so excessive as to amount to a constructive bar on competition (which would call for a reformation to a reasonable amount).

Defendants' answer that the plaintiff is attempting to prohibit Roche from competing "by imposing a monetary penalty for providing insurance services to customers who happen to be former customers of the Employers." Defendants argue that paragraph 3 of the employment agreement (no longer relied upon by plaintiff) is a bald restraint of trade and that paragraph 5 is merely the penalty provision for the enforcement of paragraph 3. Defendants contend that Michigan courts are reluctant to enforce covenants not to compete. Defendants argue that the plaintiff no longer claims that Roche wrongfully appropriated confidential information or trade secrets (apparently because it relies only on Count V of its complaint and has dropped the other counts). In any case, defendants say there was no evidence to suggest that Roche wrongfully used trade secrets or confidential information to plaintiff's detriment. Defendants argue that if plaintiff had the good-faith intention of allowing Roche to purchase insurance business, it would not have included paragraph 3 (the prohibition on selling insurance to plaintiff's customers) in the employment contract.

Defendants argue that Roche never solicited any of plaintiff's customers after termination of his employment. All the customers came to him. Defendants argue that the payment is unreasonable because it means that any time Roche sells insurance to a former customer, he must pay plaintiff three times his first year's commissions.

Defendants submit that the deposition testimony of Roche, relied on

We hold that the contractual provisions are not violative of the statute relied on by the defendants, and for reasons hereafter stated remand for further proceedings.

I

The challenged contractual provisions seek to protect the employers from the use by their employees of information acquired in the course of their employment. While an employee is entitled to the unrestricted use of general information acquired during the course of his employment[4] or information generally known in the trade or readily ascertainable,[5] confidential information, including information regarding customers, constitutes property[6] of the employer[7] and may be protected

by plaintiff, referred to the sale of an entire insurance agency, and not to "casual sales of individual insurance customers" and thus does not support a finding of reasonableness with respect to that formula. The cases involving agreed valuations did not consider the Michigan statute prohibiting anticompetitive agreements, and that statute clearly prohibits this agreement.

[4] "It has been uniformly held that general knowledge, skill, or facility acquired through training or experience while working for an employer appertain exclusively to the employee. The fact that they were acquired or developed during the employment does not, by itself, give the employer a sufficient interest to support a restraining covenant, even though the on-the-job training has been extensive and costly." Blake, *Employment Agreements Not to Compete,* 73 Harv L Rev 625, 652 (1960).

See also: Restatement Agency, 2d, § 396(b); Seavey, Agency, § 152(A), (D); Anno: *Former employee's duty in absence of express contract, not to solicit former employer's customers or otherwise use his knowledge of customer lists acquired in earlier employment,* 28 ALR3d 7, § 4. Cf. *Russell v Wall Wire Products Co,* 346 Mich 581, 590; 78 NW2d 149 (1956):

"[T]he law does not protect knowledge so general as to be common property in the trade."

[5] *Manos v Melton,* 358 Mich 500, 508-509; 100 NW2d 235 (1960); *Insealator, Inc v Wallace,* 357 Mich 233, 248-251; 98 NW2d 643 (1959); *Russell v Wall Wire Products Co,* fn 4 *supra,* pp 590-591; *Dutch Cookie Machine Co v Vande Vrede,* 289 Mich 272, 282-283; 286 NW 612 (1930).

[6] Some commentators have suggested that trade secrets and confi-

by contract.[8] Even in the absence of a contract, an employee has a duty not to use or disclose confidential information acquired in the course of his

---

dential information are not forms of property, but are nevertheless protected because of the relation of confidence between the employer and the employee. See, *e.g.*, Note, *Trade Secrets Law After Sears and Compco,* 53 Va L Rev 356, 364 (1967):

"Historically two principal justifications have been advanced for the protection of trade secrets: (1) the protection of a property right, and (2) the preservation of a confidential relationship with a person who has expended time and creative effort in developing new ideas. However, the Supreme Court laid the property right theory to rest in *E I DuPont de Nemours Powder Co v Masland* [244 US 100, 102; 37 S Ct 575; 61 L Ed 1016 (1917)], where it concluded that the property being protected was simply the 'secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith.' This left the confidential relationship as the sole basis for protection of trade secrets. In an oft-quoted phrase, Mr. Justice Holmes stated that 'the property may be denied but the confidence cannot be.' "

Similar statements have been made by this Court:

"The essence of the wrong is the breach of confidence, the betrayal of the trust placed in the recipient. As phrased in 4 Restatement, Torts, § 757, p 4:

" 'The theory that has prevailed is that the protection is afforded only by a general duty of good faith and that the liability rests upon breach of this duty; that is, breach of contract, abuse of confidence or impropriety in the method of ascertaining the secret.' " *Russell v Wall Wire Products Co,* 346 Mich 581, 585-586; 78 NW2d 149 (1956).

But see 1 Milgrim, *Trade Secrets,* § 1.01[2], pp 1-7 *ff.*

[7] 2 McCarthy, *Trademarks and Unfair Competition,* §§ 29:2-29:4.

[8] "[W]here one obtains a trade secret of another either under contract not to divulge the same or because of a relation of confidence or through his employment, he will not be permitted afterwards to make use of such secret for his own benefit or to disclose it to others without the consent of the original possessor of the secret. *O & W Thum Co v Tloczynski,* 114 Mich 149 (38 LRA 200, 68 Am St Rep 469 [1897]); *Sanitas Nut Food Co v Cemer,* 134 Mich 370 [96 NW 454 (1903)]; *Glucol Manufacturing Co v Schulist,* 239 Mich 70 [214 NW 152 (1927)]." *Dutch Cookie Machine Co v Vande Vrede,* fn 5 *supra,* pp 279-280.

See also Milgrim, fn 6 *supra,* § 3.01:

"[T]he law permits the owner of a trade secret to make his secret known to others subject to the contractual duty not to use nor to disclose the secret. The courts observe that whereas the owner of a trade secret has no exclusive right as against independent discoverers, he is permitted to use and disclose his secret pursuant to contractual restrictions, or in reliance upon an implied contract or a confidential relationship."

employment.[9] Such information is often treated as a "trade secret."[10]

Both accountants and insurance agents have an opportunity to learn information of a confidential nature in the course of their employment.[11] An

---

[9] "Unless otherwise agreed, after the termination of the agency, the agent:

\* \* \*

"(b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty." Restatement Agency, 2d, § 396(b). See also Seavey, Agency, § 152(A), (D); Anno: fn 4 *supra,* § 4.

[10] Milgrim, fn 6 *supra,* §§ 2.09[7], 2.09[8]. See also McCarthy, *supra,* § 29.2, and cases cited at fn 7; Anno: fn 4 *supra,* § 7.

[11] Both contracts acknowledge that there would be confidential information and prohibit use or disclosure.

In *Follmer,* the contract provided:

"7. Employee shall not disclose or use at any time, except as part of his employment hereunder, either during or subsequent to his employment, any secret or confidential information of knowledge obtained by Employee while employed by Employer either from Employer, its other employees, or its clients."

In *Nolta-Quail,* the contract provided that because:

"\* \* \* Employee \* \* \* may receive or contribute to valuable confidential information with respect to the identity, personnel and insurance needs of customers of the Company, and \* \* \* the Company develops and uses such information which it wishes to protect by keeping it secret and confidential for its own use and benefit, \* \* \*

"Unless Employee first shall secure the Company's written consent, Employee shall not disclose or use at any time either during or subsequent to his employment with the Company, any information with respect to the identity, personnel and insurance purchases or needs of customers of the Company of which Employee becomes informed during said employment, whether or not developed by Employee, except as required in Employee's duties to the Company, and shall retain all such information in trust in a fiduciary capacity for the sole benefit of the Company.

"2. \* \* \* Upon termination of his employment, Employee shall return all records and documents of or pertaining to the Company, including but not limited to customer lists, reservation lists, sales manuals and all other records then in his possession and shall not make or retain any copy or extract thereof.

\* \* \*

"7. In the event of a breach or threatened breach by Employee of

accountant establishes a relation of confidence with his clients. Because of the nature of the relationship, an accountant may obtain information concerning the client's personal finances and methods of keeping records. It has been said:

"the business of a certified public accountant is such that the person who actually performs the labor incident thereto acquires an intimate knowledge of the business of the client, preparing audits of the business, income tax returns and other matters very confidential in their nature, and vital to the business itself * * *. [A]s the client learns to know the accountant the desire of a client to have the particular accountant do his work increases to the point where it is almost impossible to change the accountant, owing to the confidential knowledge he has of all the important and vital matters concerning the business * * *." *Racine v Bender,* 141 Wash 606, 608; 252 P 115 (1927).[12]

An insurance agent similarly has an opportunity to learn confidential information regarding the customer's special needs and desires, the expiration dates of his insurance policies, and other valuable information. In reversing a trial court's decision voiding the nondisclosure provisions of an insurance agent's employment contract, the Supreme Court of South Dakota said:

"In selling these contracts, he relied on the entire file, not merely a customer list or the expiration dates. * * * Moreover, the files contain personal data on each

any of the provisions of this Agreement, the Company shall be entitled to an injunction restraining Employee from disclosing or using, in whole or in part, the proprietary confidential information described in paragraph 1 hereof; from rendering any services to any person or legal entity to whom such information, in whole or in part, has been disclosed or is threatened to be disclosed * * *."

[12] See also *Faw, Casson and Co v Cranston,* 375 A2d 463 (Del Ch, 1977); *Scott v Gillis,* 197 NC 223; 148 SE 315 (1929); *Ebbeskotte v Tyler,* 127 Ind App 433; 142 NE2d 905 (1957). Cf. *Foti v Cook,* 220 Va 800; 263 SE2d 430 (1980) (partnership agreement).

customer obtained in a confidential business relationship. See *Masden v Travelers' Ins Co,* 52 F2d 75, 77 (CA 8, 1931). They also contain expiration dates which are valuable in the highly competitive insurance business since policies are seldom cancelled during their term. *State Farm Mutual Automobile Ins Co v Dempster* [174 Cal App 2d 418], 344 P2d [821,] 825 [1959]." *1st American Systems, Inc v Rezatto,* 311 NW2d 51, 58 (SD, 1981).[13]

An employee who possesses confidential information regarding a client is in a position to exploit that information for the purpose of obtaining the patronage of the client after leaving his employer's service.[14] In view of the risks presented by an employee's knowledge of confidential customer information, and the perceived unfairness of allowing the employee to gain a competitive advantage by using it,[15] an employer may protect himself

[13] See also *American Republic Ins Co v Union Fidelity Life Ins Co,* 295 F Supp 553 (D Or, 1968), *remanded for further proceedings* 470 F2d 820 (CA 9, 1972); *United Ins Co of America v Dienno,* 248 F Supp 553 (ED Pa, 1965); *Clark-Lami, Inc v Cord,* 440 SW2d 737 (Mo, 1969); *Corroon & Black-Rutters & Roberts v Hosch,* 109 Wis 2d 290, 300; 325 NW2d 883 (1982) (Abrahamson, J., *dissenting).* But see *American Hardware Mutual v Moran,* 705 F2d 219 (CA 7, 1983).

[14] The value of such confidential information has been recognized by other courts:

"It seems obvious that both parties appreciate the value of the employer's list of clients, the data concerning the client's business, the fees paid to the employer for the services rendered in accounting or auditing services and other similar confidential information which became open to the appellee as a result of her employment." *Ebbeskotte v Tyler,* 127 Ind App 433; 142 NE2d 905 (1957).

"Foti and his partners understood the value to the firm of its list of clients, of the data concerning the clients' various businesses, of the information collected during the making of previous audits, of the financial responsibility of the firm's clients, and their promptness in paying accounting fees, and of such other information, some of a confidential nature, about clients as would normally be obtained by a partner in an accounting firm." *Foti v Cook,* 220 Va 800, 805-806; 263 SE2d 430 (1980).

[15] "A party who develops or possesses confidential information or trade secrets belonging to his employer should not be allowed complete freedom to terminate his association and then use this very knowledge to undercut the employer who had taken him into his

from the unauthorized use of such confidential information by obtaining an agreement that, in the event the employee obtains the patronage of former clients, he will be obliged to pay the employer according to an agreed formula.

An employer is not, however, entitled to enforce a contractual provision which would require an employee to pay for using information labelled confidential which is not in fact confidential.[16] Accordingly, in each case, a determination must be made whether the employee has in fact had access to confidential information which provides him with an unusual opportunity to obtain the patronage of particular clients of his former employer.[17]

Since no such determination was made in the instant cases, they will be remanded for determination of that factual issue. If, on remand, the plaintiff makes the requisite showing, the contractual provision designed to compensate the plaintiff for defendant's use of confidential information in

confidence. This conduct, which amounts to a virtual 'stab in the back' gives a competitor an unfair advantage and is inconsistent with our principles of fair play." *United Ins Co of America v Dienno,* 248 F Supp 553, 557 (ED Pa, 1965).

[16] "The courts will pierce any subterfuge ostensibly justifying the exaction of a noncompetition covenant by the employer. For example, the mere fact that the employer puts self-serving statements in the 'Whereas' clause of an employment contract to the effect that many trade secrets will be disclosed cannot itself determine the existence of such secrets in the absence of hard proof:

" 'In self-serving "Whereas" clauses, an employer cannot state that he is going to confide something unique and hush-hush, and then merely disclose the A-B-C's or Mother Goose Rhymes, and make that the basis of irreparable injury.' " *McCarthy,* fn 7 *supra,* § 29:16, p 437, quoting from *Arthur Murray Dance Studios, Inc v Witter,* 62 Ohio L Abs 17; 105 NE2d 685 (1952).

[17] The employer need not prove that the employee "solicited" the client. The distinction between solicitation and non-solicitation is, at best, somewhat artificial and subjective. An employee who arguably has not actively "solicited" clients of his former employer by communication with them either before or after his employment terminates may nevertheless have made use of confidential information in obtaining their patronage.

obtaining the patronage of plaintiff's clients may be enforced.

## II

An agreement requiring an employee to pay for using confidential information in obtaining the patronage of his employer's customers does not violate the statute.[18] See *Glucol Mfg Co v Schulist,* 239 Mich 70, 74; 214 NW 152 (1927).

Whether such an agreement is characterized as in restraint of trade[19] or not, it must be reasonable to be enforced.[20] To the extent such an agreement provides reasonable protection for the confidential information of the employer, it does not violate the statute and is enforceable. To the extent it goes beyond what is reasonably necessary for the protection of confidential information, it is unenforceable. The courts thus must scrutinize such agreements and enforce them only to the extent they are reasonable.

In determining whether the provisions of such an agreement are reasonable; the courts consider three interests: the public interest, the former employee's interest in continued employment, and the interest of the employer.[21] Of particular impor-

[18] "All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void." MCL 445.761; MSA 28.61.

[19] Compare, *e.g., O & W Thum Co v Tloczynski,* 114 Mich 149; 72 NW 140 (1897) (agreement protecting trade secrets not in restraint of trade) with *Scott v Gillis,* 197 NC 223; 148 SE 315 (1929) (agreement in restraint of trade).

[20] *Weickgenant v Eccles,* 173 Mich 695, 699-700; 140 NW 513 (1913); *Stoia v Miskinis,* 298 Mich 105, 118; 298 NW 469 (1941); *Hopkins v Crantz,* 334 Mich 300, 304; 54 NW2d 671 (1952).

[21] "[I]f, considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circum-

tance is the client's interest in being free to form business relationships with whomever he pleases.

An agreement that unduly limits a former employee's freedom to go into business for himself or another, or extracts an excessive price for the privilege of doing so, is unreasonable and hence unenforceable. A court may, however, enforce such a contractual provision to the extent that it is reasonable[22] by substituting a reasonable amount for the amount provided in the agreement. These cases are also remanded for a determination of the reasonableness of the contractual provisions.

Affirmed in *Follmer* and reversed in *Nolta-Quail-Sauer,* and, in both cases, remanded for proceedings consistent with this opinion.

WILLIAMS, C.J., and KAVANAGH, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with LEVIN, J.

stances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specially injurious to the public, the restraint will be held valid." *Hubbard v Miller,* 27 Mich 15, 19 (1873).

[22] *Hubbard v Miller,* 27 Mich 15, 21-23 (1873); *Hopkins v Crantz,* 334 Mich 300, 304; 54 NW2d 671 (1952):

"The court has the authority to enter a decree according to the facts so as to make the area of restriction a reasonable one."