NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0195n.06

No. 09-1471

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Mar 25, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| WILLIAM NAGLER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DR. JAY GARCIA and DR. JAY GARCIA, M.D., | ) | THE EASTERN DISTRICT OF |
| P.C., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before:  MERRITT, COOK, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Plaintiff William Nagler, M.D., sued defendants Dr. Jay Garcia and Dr. Jay Garcia, M.D., P.C., for trademark infringement and a number of state-law claims, all arising out of an aborted business relationship.  Nagler makes a raft of arguments in opposition to the district court's grant of summary judgment in favor of Garcia on all of the claims.  We affirm.

I.

Nagler is a doctor with a weight-loss clinic in Michigan.  He calls his weight-loss system "Diet Results," which he has trademarked.  The system appears to rely heavily on injections of well-known appetite suppressants.  Jay Garcia is a physician practicing in the Tampa, Florida area, with a professional corporation in his name.  In 2003, a mutual friend of the two doctors told Garcia about Diet Results and said that Nagler was interested in licensing the system to other physicians.

The friend then introduced Nagler and Garcia, and the parties began negotiations over a business arrangement.

The parties reached a tentative agreement on the economic terms of the arrangement in December 2003, but other material terms remained unresolved. During the negotiations, Garcia asked to visit Nagler's clinic. Nagler was willing to let Garcia do so if Garcia signed a Confidentiality Agreement. Garcia traveled to Michigan in January 2004, and upon his arrival signed a Confidentiality Agreement stating that he would keep confidential "any and all" information he learned about Diet Results. R. 26 Exh. J at 2.

During the visit, Garcia observed how Nagler ran his office and received a package of information about Diet Results from Nagler. The package included advertising material that Nagler told Garcia he could use. Nagler also recommended that Garcia purchase a software package that worked with Diet Results.

Garcia returned to Florida with the information and began integrating Diet Results into his medical practice. Things deteriorated from there. In March 2004, the Florida Department of Health informed Garcia that his advertisements for Diet Results violated Florida regulations. In addition, the software package that Nagler had recommended was not working well.

Meanwhile, the parties continued negotiating, though by December 2004 they still lacked a final agreement. On December 21, 2004, Garcia sent Nagler an e-mail stating that "[u]nfortunately, we have failed to come to terms on the details of th[e] business arrangement" and that he "therefore plan[ned] to go [his] own way[.]" R. 36 Exh. K. The parties agree that this e-mail ended their business relationship.

Nagler asserts that Garcia thereafter continued to use Diet Results and began selling the system to other doctors in Florida. He also says Garcia continued advertising using the Diet Results trademark.

Nagler filed suit against Garcia based on these allegations, asserting claims for trademark infringement, fraud, and breach of the Confidentiality Agreement. Garcia filed a motion for summary judgment on all claims, which the district court granted.

This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56(c)(2). A defendant is entitled to summary judgment if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.

Nagler alleged a variety of trademark-related claims in his complaint, but the only one he pursues on appeal is his trademark-infringement claim under 15 U.S.C. § 1114(1). To prevail on such a claim, the plaintiff must prove that: (1) the plaintiff owns the registered trademark; (2) the defendant used the mark in commerce without the plaintiff's consent; and (3) the use was likely to cause confusion. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). The third factor is the most important, and asks "whether the defendant's use of the disputed mark is likely to cause

confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

Both parties agree that Nagler consented to Garcia's use of the Diet Results trademark during the parties' negotiations, but that Nagler's consent was withdrawn on December 21, 2004. Garcia asserts that he stopped using the trademark on that date, but Nagler points to a printout of Garcia's website from June 28, 2005. The website itself does not mention Diet Results, but those words appear in the website's URL: http://www.beautyinaflash.com/dietresults.html.

That usage cannot support a claim for trademark infringement. *See Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 698 (6th Cir. 2003) ("[I]t is unlikely that the presence of another's trademark in a post-domain path of a URL would ever violate trademark law"). Nagler presents no evidence supporting a departure from the rule stated in *Interactive Products*. The district court properly granted summary judgment on the trademark-infringement claim.

B.

Nagler also challenges the grant of summary judgment on his fraud claim. He alleges that Garcia fraudulently "misrepresented that he would . . . abide by a confidentiality agreement[,] and that he would execute a licensing agreement[.]" Nagler Br. at 32.

Under Michigan law, the plaintiff must prove a claim for fraud by clear and convincing evidence. *Foodland Distribs. v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1996). Generally, a fraud claim "must be predicated upon a statement relating to a past or an existing fact[,]" because "[f]uture promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Michigan recognizes an exception to that rule, however,

when the future promise was "made in bad faith without intention of performance." *Id.*

Nagler admits that his claim is based on a future promise—namely, Garcia's promise to enter into a final contract—but argues that his claim falls within the exception. Specifically, Nagler asserts that Garcia's fraudulent intent can be inferred from various statements that Garcia made during negotiations. But Nagler has not produced any evidence that Garcia's statements were untrue. Meanwhile, the record contains numerous e-mails and correspondence that, on their face, demonstrate Garcia's good faith. The district court properly granted summary judgment on this claim.

## C.

Nagler next challenges the district court's grant of summary judgment on his claims for misappropriation of trade secrets and for breach of the Confidentiality Agreement. Each of these claims is based on Nagler's assertion that, after the parties' business relationship ended, Garcia continued using the Diet Results system in his own practice and sold the system to other doctors.

For the misappropriation claim, we must first determine whether Nagler possessed a trade secret. Under Michigan law, a trade secret is defined as information that: "(i) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"; and "(ii) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Mich. Comp. Laws § 445.1902(d). These provisions emphasize that "the essence of a trade secret is that it derives its value from secrecy." *Stromback v. New Line Cinema*, 384 F.3d 283, 305 (6th Cir. 2004).

Here, Nagler does not contend that the medical advice embodied in Diet Results constitutes a trade secret. Instead, he asserts that the "business end of the practice"—"how to start up a weight loss practice, how to catch the attention of prospective patients in advertising," and so on—is a trade secret. Nagler Br. at 38-39.

We are unpersuaded. Nagler has not produced any evidence that he possesses secret knowledge about how to operate a profitable weight-loss clinic. For instance, he refers to a "business plan chart" he created, but the chart is simply a set of profit projections. Moreover, it is undisputed that all of the materials actually relating to the business operation—Nagler's prior advertisements, his pricing information, and the software he used—were available to the public, and thus are not trade secrets. *Cf. Hayes-Albion v. Kuberski*, 364 N.W.2d 609, 615 (Mich. 1984) (holding that a trade secret is not created by "the mere privacy with which an ordinary commercial business is carried on" (internal quotation marks omitted)).

Nagler's claim for breach of the Confidentiality Agreement likewise requires proof that Garcia actually received some confidential information. Nagler has no such proof. He cites a provision in the Confidentiality Agreement to the effect that all information would be *considered* confidential "even if it could also have been acquired in a non-confidential manner." But that provision is unenforceable under Michigan law. *See Follmer, Rudzewicz & Co. v. Kosco*, 362 N.W.2d 676, 683 (Mich. 1984) (refusing to enforce a clause that would make someone pay damages "for using information labeled confidential which is not in fact confidential"). The district court properly granted summary judgment on Nagler's claims for misappropriation of trade secrets and breach of the Confidentiality Agreement.

D.

Nagler finally challenges the district court's denial of his motion to amend his complaint. We review that decision for an abuse of discretion. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).

Nagler never actually filed a motion to amend. Instead, he argued in his brief opposing summary judgment that he should be allowed to recover on two claims that were not included in the complaint—a quantum meruit (unjust enrichment) claim and an unspecified breach of contract claim. The district court rather generously construed this argument as an implicit motion to amend. *See Niemi v. NHK Spring Co.*, 543 F.3d 294, 307 (6th Cir. 2008). The court then denied the motion, concluding that Nagler's amendments "would very likely be futile" and that Garcia "would clearly be prejudiced by the addition of new claims after the close of discovery and after a motion for summary judgment ha[d] been filed." Dist. Ct. Op. at 28 n.19.

That denial fell within the district court's core power to manage the case. Nagler did not make his request to amend "until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *see also Niemi*, 543 F.3d at 307 (holding that the district court did not abuse its discretion in denying an "eleventh hour" amendment to add a quantum meruit claim). A party cannot await a summary-judgment motion to determine how best to configure its pleadings. Nagler's argument is meritless.

The district court's judgment is affirmed.