COMPTON v JOSEPH LEPAK, DDS, PC

Docket No. 87056. Submitted June 17, 1986, at Detroit. Decided
September 8, 1986. Leave to appeal denied, 428 Mich 862.

Kenneth Compton entered into an employment agreement with
Joseph Lepak, D.D.S., P.C., (Lepak) which included a covenant
not to compete. Under the terms of the covenant, Compton
agreed that, upon termination of the employment agreement,
he would not enter into or engage in the practice of dentistry
within a fifteen-mile radius of the location of the Lepak office.
Approximately eight years later, Compton gave notice of termi-
nation of the employment contract and indicated his intention
to open an office within fifteen miles of the Lepak location.
Compton filed a declaratory action against Lepak in Oakland
Circuit Court seeking to have the covenant to compete declared
void and unenforceable because at the time the covenant was
entered into such covenants were expressly declared illegal by
statute. That statute had been repealed by the Michigan Anti-
trust Reform Act (MARA) shortly before Compton filed suit in
this case. The court, John N. O'Brien, J., concluded that MARA
incorporated prior public policy and case law which rendered
void and unenforceable all covenants not to compete in profes-
sional service agreements and granted summary judgment in
favor of plaintiff. Defendant appealed.

The Court of Appeals *held:*

1. The trial court erred in holding that MARA incorporated
the previous rule of the former statute and in holding that the
covenant not to compete in this case was unreasonable because
it was unlimited in time. MARA incorporates a rule less prohibi-
tive than the former statute and only makes unlawful any
contract which is an unreasonable restraint of trade. The fact
that the covenant at issue is unlimited as to duration does not

REFERENCES

Am Jur 2d, Contracts §§ 155 *et seq.*

Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
Practices §§ 511 *et seq.*

Am Jur 2d, Statutes §§ 342 *et seq.*

Validity and construction of contractual restrictions on right of
medical practitioner to practice, incident to employment agree-
ment. 62 ALR3d 1014.

render it unreasonable, rather the court should interpret it as having a duration reasonable in time.

2. The enactment of MARA does not render the covenant not to compete enforceable. The covenant was void at its inception, and statutes generally are not to be retroactively applied where to do so would impair vested rights.

3. The trial court reached the right result, but for the wrong reason.

Affirmed.

1. MASTER AND SERVANT — COVENANTS NOT TO COMPETE — PROFESSIONAL SERVICE AGREEMENTS — ANTITRUST.

The Michigan Antitrust Reform Act, unlike its predecessor statute which declared void any agreement not to compete, whether reasonable or unreasonable, only makes unlawful any contract which is an unreasonable restraint of trade, as under the common law or § 1 of the Sherman Antitrust Act or monopolized trade under § 2 of the Sherman Antitrust Act (MCL 445.761 [repealed], 445.772; MSA 28.61 [repealed], 28.70[2]).

2. MASTER AND SERVANT — COVENANTS NOT TO COMPETE.

An agreement that unduly limits an employee's freedom to go into business for himself or another, or extracts an excessive price for the privilege of doing so, is unreasonable and therefore unenforceable; a court may, however, enforce such a contractual provision to the extent that it is reasonable by substituting a reasonable amount for the amount provided in the agreement.

3. APPEAL — RIGHT RESULT FOR WRONG REASON.

The Court of Appeals will not reverse a trial court's decision where the right result is reached, although for the wrong reason.

4. STATUTES — RETROACTIVITY.

Statutes are not to be retroactively applied where doing so would impair vested rights.

5. CONTRACTS — ILLEGAL CONTRACTS.

An agreement or contract which is entered into in violation of a statute normally does not become valid by the repeal of that statute because the Legislature cannot validate a contract which never had a legal existence; exceptions exist where the repealing statute expressly or impliedly states that it validates previously invalid agreements or where the repealed statute affects only a remedy.

6. MASTER AND SERVANT — COVENANTS NOT TO COMPETE — PROFES-
    SIONAL SERVICE AGREEMENTS — ANTITRUST.

   The enactment of the Michigan Antitrust Reform Act does not
   render enforceable covenants not to compete contained in
   professional service agreements which were void ab initio un-
   der the previously existing statutes (MCL 445.761 [repealed],
   445.772; MSA 28.61 [repealed], 28.70[2]).

*Butzel, Long, Gust, Klein & Van Zile* (by *T. Gordon Scupholm II* and *Lynn M. Abraham*), for plaintiff.

*Kazul, Houston & Ferriby, P.C.* (by *Robert L. Ferriby, Jr.,* and *Louann Van Der Wiele*), for defendant.

Before: ALLEN, P.J., and WAHLS and M. WAR-
SHAWSKY,* JJ.

ALLEN, P.J. We are asked to decide whether a convenant not to compete in a professional service agreement, admittedly unenforceable under Michigan's former antitrust statute, MCL 445.761; MSA 28.61, when entered into in June, 1978, became enforceable upon the enactment of the Michigan Antitrust Reform Act (MARA), which on March 29, 1985, repealed former MCL 445.761; MSA 28.61. The trial court did not answer this question, but on different grounds granted summary judgment to plaintiff on August 5, 1985. Defendant appeals as of right. The question raised is of first impression.

On approximately June 1, 1978, plaintiff, Kenneth Compton, and defendant, Joseph Lepak, D.D.S., P.C., entered into an independent contract of employment. Pursuant to the contract, Compton was required to perform services as a licensed, practicing dentist on behalf of the corporation. As

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

part of the agreement, the corporation agreed to pay all office expenses, personal calls, one-half of all laboratory expenses, and further the professional skills of Compton in the atmosphere of an established office. The contract further provided that Compton would be entitled to one-half of the gross fees generated by his services. Additionally, the contract included a covenant not to compete the key provision of which is contained in paragraph 6:

> 6. Upon the termination of this Agreement, Dr. Compton agrees to refrain from entering into or engaging in the practice of dentistry, either as an individual or as a partner, joint venturer, or as an employee, shareholder or officer of any corporation, located within a fifteen (15) mile radius of the present location of the premises of the Corporation. The parties also agree that in the event of a breach of the promise contained in this Paragraph, the Corporation shall be entitled to institute proceedings in any court of competent jurisdiction, either in law or in equity, to obtain damages for any breach of this Agreement, or to enforce the specific performance thereof by Dr. Compton from performing services for any such other person, firm or corporation.

Compton gave notice of termination of the contract of employment, effective July 28, 1985, and indicated his intention to open an office within the fifteen-mile radius of the present location of the corporation. The corporation is presently located in Oakland County at 9810 Commerce Road, Union Lake, Michigan. On May 6 1985, Compton filed a declaratory action against the corporation in Oakland Circuit Court seeking to have the covenant not to compete declared void and unenforceable.

On June 14, 1985, Compton filed a motion for

summary disposition pursuant to MCR 2.116(C)(8) and (9) to declare the restrictive covenant void and unenforceable. The corporation filed a response in opposition. After a hearing on July 3, 1985, the trial court granted Compton's motion.

After first stating that he could not decide the issue of reasonableness of the fifteen-mile limitation without an evidentiary hearing and expert testimony, the trial judge concluded that MARA incorporated prior public policy and case law which rendered void and unenforceable all covenants not to compete in professional service agreements. Accordingly, the court declared paragraph 6 of the agreement void and unenforceable.[1] On August 6, 1985, an order granting summary disposition in favor of plaintiff was entered.

Defendant corporation appeals as of right raising two issues: (I) Did the trial court err in concluding that MARA, MCL 445.771 *et seq.;* MSA 28.70(1) *et seq.,* rendered void and unenforceable all covenants not to compete in professional service agreements?; and (II) Did a covenant not to compete which was void and illegal under the former statute become legal and enforceable upon the passage of MARA, which repealed the former statute?

I

Former MCL 445.761; MSA 28.61, effective June

---

[1] I do think that a contract to limit one's personal service is unreasonably broad where it's for an indefinite period of time. With regard to the statutory construction here, and the interpretation that is necessary, I think that sections MCLA 445 and [sic] 772 and 774 make such agreements unlawful and I think those sections were intended to include the prohibition that was contained in the former statute, section 661. Thank you gentlemen.

20, 1905, and in effect when the covenant not to compete in the instant case was entered into in June, 1978, provided:

Sec 1. All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

Under that provision, a contract clause by which a person agreed not to compete in a profession or business was illegal unless it was incident to the sale of a business or profession and met the other criteria set forth in MCL 445.766; MSA 28.66. *Bernstein, Bernstein, Wile & Gordon v Ross*, 22 Mich App 117; 177 NW2d 193 (1970). However, upon the enactment of MARA by 1984 PA 274, effective March 29, 1985, former MCL 445.761; MSA 28.61 was repealed. The question is whether the convenant not to compete in the instant case is void under MARA, which repealed former MCL 445.761; MSA 28.61.

The relevant provision of MARA is § 2, MCL 445.772; MSA 28.70(2), which provides:

A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful.

This section is identical to one in the Uniform

State Antitrust Act (USAA).[2] The USAA comment to this section provides in pertinent part that:

> This section gathers together and proscribes all concerted or collusive conduct in unreasonable restraint of trade, as under the common law and section 1 of the Sherman Act, and to monopolize trade, as under section 2 of the Sherman Act. . . . The adoption of Sherman Act language establishes its general standards of legality, provides needed flexibility, and makes available to state courts the relevant body of federal precedent.

Unlike former MCL 445.761; MSA 28.61, which declared void any agreement not to compete, whether reasonable or unreasonable, § 2 of MARA only makes unlawful any contract which is an unreasonable restraint of trade, as under the common law or § 1 of the Sherman Act or monopolized trade under § 2 of the Sherman Act. The trial judge granted plaintiff's motion on the ground that the covenant not to compete was not limited in duration. As noted earlier, the covenant in the instant case lacks any statement of the duration of the agreement not to compete. Unfortunately, there is no Michigan authority as to the reasonableness of a covenant not to compete which is unlimited in duration.

---

[2] According to the prefatory note to MARA, the act is based largely on the Uniform State Antitrust Act (USAA):

> The Michigan Antitrust Reform Act ("MARA") is based largely on the Uniform State Antitrust Act promulgated by the National Conference of Commissioners on Uniform State Laws in 1973, and approved by the American Bar Association in 1974. Slight modifications were made to the USAA in 1979 although the Conference of Commissioners concluded that major revisions are not appropriate. These comments indicated the source of each provision and the intent of the Council of the Antitrust Law Section of the State Bar of Michigan and the legislature in drafting the MARA.

The weight of authority in other jurisdictions is that covenants not to compete will *not* be stricken simply because they are unlimited in time. Instead they are enforced during a period deemed reasonable. *Styles v Lyon,* 87 Conn 23; 86 A 564 (1913); *Hansen v Edwards,* 83 Nev 189; 426 P2d 792 (1967); *Foster v White,* 248 App Div 451; 290 NYS 394 (1936), aff'd 273 NY 596; 7 NE2d 710; 292 NYS 931 (1937); *Lewis v Krueger, Hutchinson & Overton Clinic,* 153 Tex 363; 269 SW2d 798 (1954) (included as annotations within 52 ALR3d 1013, Appendix C); *Edwards v Davis,* 160 Ga App 122; 286 SE2d 301 (1981) (covenant not to compete accompanying sale of physician's practice); *Horne v Radiological Health Services, PC,* 83 Misc 2d 446; 371 NYS2d 948 (1975), aff'd 51 App Div 2d 544; 379 NYS2d 374 (1976); *Huff v Tippett,* 452 SW2d 523, 525 (Tex Civ App, 1970) (included as annotations within Comment: *The Antitrust Ramifications of Noncompetition Clauses in the Partnership and Employment Agreements of Doctors,* 30 Loyola L Rev 307, 327 [1984]). But see, *Schneller v Hayes,* 176 Wash 115; 28 P2d 273 (1934). The case cited by defendant, *Freudenthal v Espey,* 45 Colo 488; 102 P 280 (1909), is no longer good law, see Colorado Revised Statutes 8-2-113(3). Effective April 6, 1982, Colorado made restrictive covenants between physicians illegal per se.

In *Follmer, Rudzewicz & Co, PC v Kosko,* 420 Mich 394; 362 NW2d 676 (1984), which involved a contract provision requiring employees to pay the employer if an employee used confidential information to obtain patronage of his employer's customers, our Supreme Court wrote:

> An agreement that unduly limits a former employee's freedom to go into business for himself or another, or extracts an excessive price for the

privilege of doing so, is unreasonable and hence unenforceable. *A court may, however, enforce such a contractual provision to the extent that it is reasonable by substituting a reasonable amount for the amount provided in the agreement.* These cases are also remanded for a determination of the reasonableness of the contractual provision. [420 Mich 409. Emphasis added.]

Although *Kosko* did not directly involve a covenant not to compete situation, the language used by the Supreme Court is broad enough to clearly indicate that, given a covenant not to compete unlimited in time, the Supreme Court would enforce the covenant for a period deemed reasonable.

Federal cases involving the validity of covenants not to compete unlimited in duration follow the same rules as do the state authorities. In *Lektro-Vend Corp v Vendo Co,* 660 F2d 255 (CA 7, 1981), the court stated:

[M]ost modern courts will uphold a covenant to the extent that a breach of the covenant has occurred *within a reasonable geographic area and time period,* and, where applicable, with respect to a product reasonably related to the legitimate purpose of the restraint. *See, e.g., Alders v AFA Corp of Florida,* 353 F Supp 654, 658 (SD Fla, 1973), *aff'd without opinion,* 490 F2d 990 (5th Cir, 1974); *Blake, Employee Agreements Not to Compete,* 73 Harv L Rev 625, 674 (1960); *Bork, Ancillary Restraints and the Sherman Act,* 15 ABA Section of Antitrust Law Proceedings 211, 223-24 (1959). [*Id.,* p 267.]

Thus, it appears the "unreasonableness" of a covenant is to be determined under the developed common law. Also see *Snap-On-Tools Corp v FTC,* 321 F2d 825 (CA 7, 1963). For an excellent review of the law concerning covenants not to compete in

employment agreements between physicians, see Comment: *The Antitrust Ramifications of Noncompetition Clauses in the Partnership and Employment Agreements of Doctors, supra.*

Based on the above authority we conclude that the respected trial judge erred in holding that MARA incorporated the previous rule of former MCL 445.761; MSA 28.61 and further erred in holding that paragraph 6 of the contract in the instant case was unreasonable because it was unlimited in time. MARA incorporates a rule less prohibitive than the former rule. Furthermore, paragraph 6 should be interpreted as having a duration reasonable in time and is therefore reasonable.

II

Our decision that the trial court erred in issue I does not necessarily require reversal. We must proceed to issue II. For if the agreement not to compete, although clearly unenforceable under the statute when entered into, does not become enforceable upon the enactment of MARA, the trial court did not err in granting summary disposition under MCR 2.116(C)(10), former GCR 1963, 117.2(3). This Court will not reverse where the trial court reaches the right result albeit for the wrong reason. *Gilbert v Grand Trunk W R Co,* 95 Mich App 308, 313; 290 NW2d 426 (1980).

Defendant argues that when MARA was enacted the defense which plaintiff had when the contract was made (illegality) was removed and when plaintiff terminated the contract in July, 1985, the defense no longer existed. Further, the general rule that a change of law will not validate a contract which was unenforceable when made has an exception where, as here, the repealing statute

implies that the general rules is inapplicable. According to defendant, the exception applies because MARA exorcised the policy underlying former MCL 445.761; MSA 28.61.

Plaintiff argues that the exception to the void ab initio rule does not apply because MARA does not expressly or by implication raise from the dead a void contract. Plaintiff further argues that former MCL 445.761; MSA 28.61 did not merely give plaintiff a defense to the enforcement of the agreement not to compete, but, instead, it voided the clause. Finally, plaintiff argues that statutes are not to be retroactively applied where it would impair vested rights.

While the issue is admittedly close in the instant case, we agree with plaintiff. When an agreement or contract is entered into in violation of the statute, repeal of that statute does not make the agreement valid because the Legislature cannot validate a contract which never had a legal existence. *Webber v Howe,* 36 Mich 149, 155-156 (1877); 17 Am Jur 2d, Contracts, § 172, p 530; Calamari & Perillo, Contracts (2d ed), § 22-14, p 799; 15 Williston On Contracts, § 1758, p 186. But see, 17 Am Jur 2d, Contracts, § 172, p 530, n 10.

An exception to this rule is made: (1) if the repealing statute expressly states that it validates previously invalid agreements or impliedly so states "as for example 'when the policy underlying the original statute or the extent of its prohibition is doubtful,'" Calamari & Perillo, *supra,* or (2) if the repealed statute affects only a remedy. 17 Am Jur 2d, § 172, *supra.*

None of the exceptions apply in the instant case. MARA does not *expressly* state that previously void contracts not to compete are somehow now valid. Nor do we agree that MARA *by implication* validates previously void contracts on grounds that

"the policy underlying the original statute was doubtful." In our opinion the policy underlying a repealed statute necessarily becomes "doubtful"—otherwise the statute would not be repealed.

Further, we do not agree that the former statute merely gave plaintiff a defense. It did more than that, viz.: it voided the covenant not to compete, instead of making the convenant voidable at plaintiff's option.

Likewise, we do not agree that MARA is purely "remedial" or "procedural." Such statutes are given retroactive effect. *Ballog v Knight Newspapers, Inc*, 381 Mich 527, 533-534; 164 NW2d 19 (1969); *Franks v White Pine Copper Division, Copper Range Co*, 122 Mich App 177, 185; 332 NW2d 447 (1982). The "Prefatory Note" to MARA[3] clearly states that MARA was enacted in order to create uniform state laws and to draw upon federal antitrust decisions. Thus, MARA is substantive, rather than purely remedial or procedural.

Based on our construction of MARA, defendant cannot prevail by asserting that MARA is, by definition, retrospective. A retrospective statute is one which takes away or impairs vested rights, creates a new liability, imposes a new duty or attaches a new disability in respect to transactions or consideration already passed. *Hansen-Snyder Co v General Motors Corp*, 371 Mich 480, 484; 124 NW2d

---

[3]

If state antitrust legislation is to form an integral part of our overall antitrust policy, the burden of compliance with the antitrust laws of the several states must be abated by the adoption of a uniform state antitrust act. Existing state antitrust legislation is similar in many respects, but hardly can be called uniform. This lack of uniformity coupled with the many drafting defects and substantive inadequacies found in some of the state legislation motivated the formulation of this proposed Uniform State Antitrust Act to mitigate the burdens of compliance.

286 (1963). If MARA were applied to validate the covenant not to compete, it would be imposing a new duty or new liability on plaintiff which did not exist prior to its enactment, i.e., it would be retroactive. However, we have already determined that MARA was not intended to create a duty which, by prior law, did not exist.

In summary, we commenced this opinion by asking whether a covenant not to compete contained in a professional service agreement, which was clearly unenforceable under former MCL 445.761; MSA 28.61 when entered into, became enforceable upon the enactment of MARA, which repealed former MCL 445.761; MSA 28.61. We end our opinion by answering this question in the negative. While MARA repealed former MCL 445.761; MSA 28.61, it did not render enforceable a contract void at its inception. Though giving the wrong reasons, the trial court arrived at the correct result.

Affirmed. No costs, a question of public importance being involved.