REHMANN, ROBSON & COMPANY v McMAHAN

Docket No. 115042. Submitted October 2, 1990, at Lansing. Decided
    January 9, 1991, at 9:30 A.M. Leave to appeal sought.

    Rehmann, Robson & Company, an accounting firm, brought an
    action in the Midland Circuit Court against Mark R. McMahan
    and William H. Thomson, its former employees, seeking dam-
    ages under indemnity agreements entered into by the defen-
    dants providing that, upon termination of their employment
    relationship with the plaintiff and for a period of two years
    thereafter, they would not solicit or do business with a client of
    the plaintiff within the year preceding their termination or pay
    certain specified damages. The court, Tyrone Gillespie, J.,
    granted summary disposition for defendants, holding the agree-
    ments void as contracts of adhesion. The plaintiff appealed.

    The Court of Appeals held:

    The agreements are not contracts of adhesion.

    1. The statute in effect when these agreements were signed
    made illegal, void and contrary to public policy only those
    agreements that prohibited all competition, but it did not
    prohibit an agreement, such as in this case, which merely
    prohibited contacting or providing services for clients of an
    employer without the employer's permission for a limited time
    after leaving the employment of that employer. The agree-
    ments at issue did not restrict the defendants from engaging in
    their profession or business.

    2. A contractual provision is unenforceable as a contract of
    adhesion only where the provision has been secured as a result
    of unbalanced bargaining power and is substantively unreason-
    able. Even if the indemnity agreements in this case were
    secured because of unequal bargaining power, they are enforce-
    able because the challenged provisions are reasonable and are
    neither oppressive nor unconscionable.

    Reversed and remanded.

REFERENCES

Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
    Practices §§ 546, 548, 554, 569, 579.
Enforceability of covenant against competition in accountant's em-
    ployment contract. 15 ALR4th 559.

MASTER AND SERVANT — FORMER EMPLOYEES — COVENANTS NOT TO
    COMPETE — ADHESION CONTRACTS.

> An agreement to refrain from soliciting or providing services to
> the clients of a former employer for a limited time after
> termination of employment or to pay an amount equal to the
> prior year's billing of the client by the employer for any
> violation of the agreement is neither violative of the former
> statute rendering void agreements not to engage in any avoca-
> tion, profession, or business nor so unreasonable, oppressive, or
> unconscionable as to be unenforceable as a contract of adhesion
> (MCL 445.761; MSA 18.61 [repealed]).

*Braun, Kendrick, Finkbeiner, Schafer & Murphy*
(by *Thomas F. James* and *Scott C. Strattard*), for
the people.

*Sinclair, Poznak, Rogers & Ross, P.C.* (by *Peter
A. Poznak*), for the defendants.

Before: WAHLS, P.J., and DOCTOROFF and G. S.
ALLEN,* JJ.

PER CURIAM. In this case which involves an
"antipiracy" provision, plaintiff accounting firm
appeals as of right from a January 19, 1989, order
of the Midland Circuit Court granting summary
disposition pursuant to MCR 2.116(C)(8) in favor of
defendants.

The facts are straightforward and undisputed.
Defendants are former employees of plaintiff's
firm. Thompson began working for plaintiff in
1977; McMahan commenced working for plaintiff
in 1979. In August 1982, the partner in charge of
personnel approached all employees, including de-
fendants, and asked that they sign documents
entitled "Indemnity Agreement." Allegedly believ-
ing that their failure to sign the document would

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

threaten either their opportunity for advancement or their job security, both defendants signed.

On August 25, 1987, five years after signing the agreement, defendants voluntarily left plaintiff's employment and formed their own firm. Two days later, defendants commenced doing business as the accounting firm of McMahan and Thomson. On August 31, 1987, an attorney representing plaintiff, wrote defendants a letter, the text of which provides in pertinent part:

> 1. You may not directly or indirectly contact or solicit a client of Rehmann, Robson & Co. This precludes any contact which is initiated by you, or on your behalf, including telephone calls, correspondence, business announcements, etc.
>
> 2. You may not offer to perform any services for a client of Rehmann, Robson & Co.
>
> 3. You may not actually perform any services for a client of Rehmann, Robson & Co. For a period of two years, this would preclude your performing any services for persons or organizations who were clients of Rehmann, Robson & Co. as of your termination.

Subsequently, plaintiff learned that defendants' firm was providing accounting services for former clients of Rehmann, Robson & Co. and filed a complaint in the Midland Circuit Court, seeking enforcement of the payment provisions of the indemnity agreements and an accounting. The complaint did not seek to enjoin or prohibit defendants from performing services for plaintiff's former clients.

Defendants answered plaintiff's complaint and alleged the following affirmative defenses: (1) the indemnity agreement was obtained by coercion and duress, (2) the agreement was without consideration, (3) the agreement was void pursuant to

MCL 445.761; MSA 28.61, and (4) the agreement was unreasonable. Later, defendants admitted in answers to interrogatories propounded by plaintiff that as of December 9, 1987, defendants were performing accounting services for thirty-eight former clients of plaintiff.

On September 9, 1988, plaintiff moved for summary dismissal of defendants' affirmative defense of coercion and duress. On October 4, 1988, defendants moved for summary disposition pursuant to MCR 2.116(C)(10) (with respect to the affirmative defense of lack of consideration) and pursuant to MCR 2.116(C)(8) (with respect to the affirmative defense that the agreement was void under MCL 445.761; MSA 28.61). In response to defendants' motions, plaintiff informed the court that in *Follmer, Rudzewicz & Co, PC v Kosco,* 420 Mich 394; 362 NW2d 676 (1984), the Michigan Supreme Court had upheld an antipiracy clause virtually identical to the agreements in the instant case.

Following a hearing on November 18, 1988, the court indicated factual issues remained regarding plaintiff's motion, and took defendants' (C)(8) motion under advisement. On December 30, 1988, the court issued a written opinion granting defendants' motion on grounds that the agreements which plaintiff sought to enforce by their express terms contravened MCL 445.761; MSA 28.61 and amounted to "classic contract[s] of adhesion." The court explained:

> The thrust of the indemnity agreement whichis [sic] the subject of this lawsuit is found in the first paragraph which was an agreement not to *contact* any client or *perform any services* for any client for two years after termination.
>
> This contravened the statute then in existence, MCL 445.761; MSA 28.61 . . . .
>
> That the restriction in the first paragraph [in

the agreement] was the main thrust of the agreement is clear from the letter in the file which was sent to defendants on August 25 [sic 31], 1987 . . . .

. . . *Follmer* can be distinguished in that the contract in that case did not contain an agreement not to compete as does the agreement in the instant case. The contract in this case is clearly for the purpose of preventing the defendants from competing as clearly appears in [the August 31, 1987] letter to the defendants.

A second difference is that in *Follmer* the contract was for the sale of goodwill rather than a penalty and it was so arranged as to allow reasonable payment over five years. This contract demands 100% payment forthwith and is clearly a penalty as [the August 31, 1987] letter explains.

By order dated January 18, 1989, plaintiff's complaint was dismissed. Plaintiff now challenges the court's ruling, raising, in essence, two issues.

I

Are the agreements in the instant case void and unenforceable under MCL 445.761; MSA 28.61?[1]

---

[1] MCL 445.761; MSA 28.61, which was in effect at the time the indemnification agreements were signed, provided as follows:

All agreements and contracts by which any person, co-partnership or corporation promises or agrees *not to engage in any avocation, employment, pursuit, trade, profession or business,* whether reasonable or unreasonable, partial or general, limited or unlimited are hereby declared to be against public policy and illegal and void. [Emphasis added.]

The statute was repealed by § 17 of the Antitrust Reform Act, 1984 PA 274, MCL 445.787; MSA 28.70(17), which took effect on March 29, 1985. However, § 18 of the Antitrust Reform Act contains a saving clause which provides that a statute repealed by the act is to remain in force for the purpose of instituting or sustaining any proper action for the enforcement of any liability. MCL 445.788; MSA 28.70(18).

Except where a repealing act expressly seeks to validate

Defendants contend that "taken as a whole and as interpreted by Rehmann, Robson, the 'Indemnity Agreements' are covenants not to compete, unenforceable as void per the . . . statute," citing *Compton v Joseph Lepak, DDS, PC,* 154 Mich App 360; 397 NW2d 311 (1986), an opinion which coincidentally was authored by one member of the instant panel. We strongly disagree.

*Compton* involved an agreement "to refrain from entering into or engaging in the practice of dentistry, either as an individual or as a partner, joint venturer, or as an employee, shareholder or officer of any corporation, located within a fifteen (15) mile radius . . . ." *Id.,* p 363. However, unlike the agreement in *Compton,* nothing in the language of the indemnity agreements at issue preclude a Rehmann, Robson employee, upon leaving the company for any reason, from opening an office for the practice of accounting within the immediate or any other geographical area. Nor do the agreements prevent defendants from competing or trying to compete with plaintiff. The instant agreements impose only two restrictions on employees who wish to engage in an accounting business of their own. First, former employees must refrain from (a) contacting or soliciting or (b) offering to perform or performing any service for a Rehmann, Robson client for a period of two years following the employee's termination of employment with Rehmann, Robson without written con-

agreements which were statutorily void at their inception, the repealing act will not validate previously void agreements. *Webber v Howe,* 36 Mich 149, 155 (1877). [*Burns Clinic Medical Center, PC v Vorenkamp,* 165 Mich App 224, 227; 418 NW2d 393 (1987).]

Because the repealing act did not expressly seek to validate prior agreements void under MCL 445.761; MSA 28.61, the agreements in this case must be viewed in light of that statute in order to determine their validity.

sent of plaintiff. Second, if at any time within two years after leaving Rehmann, Robson, an employee provides any service for an individual or an entity who was a client of Rehmann, Robson within one year preceding the employee's date of termination, the employee becomes indebted to Rehmann, Robson for a sum equal to one hundred percent of Rehmann, Robson's billings to that individual or entity for the one-year period preceding the employee's termination of employment. Contrary to defendants' assertion, we fail to see how the first restriction in itself "is a direct prohibition of competition."

Further, unlike *Compton,* we note that plaintiff's suit was not brought in an attempt to prohibit defendants from providing services to plaintiff's former clients, but to enforce the penalty provisions of the agreements.

For these reasons, we disagree with the court that the indemnity agreement "contravenes the statute then in existence." Further, contrary to the court's written opinion, the agreements do not go so far as to prohibit defendants from contacting "any client" or performing service for "any client" within two years. Instead, the restriction applied to *contacting a client of the partnership or providing services for a client of the partnership* without plaintiff's permission or unless defendants were willing to honor the penalty provisions of the agreements. This is far less a restraint on competition than claimed in defendants' brief or by the court.

Taken as a whole, we find the agreements restrict defendants only from contacting or performing services for former clients of Rehmann, Robson, subject to certain exceptions detailed in the preceding paragraph. The agreements do not restrict defendants from "engaging in any avoca-

tion" and thus do not violate MCL 445.761; MSA 28.61. Other agreements, which far more substantially discouraged competition than the instant agreements, have been upheld as not being violative of the statute. *Woodward v Cadillac Overall Supply Co,* 396 Mich 379; 240 NW2d 710 (1976) (upholding a denial of a former employee's right to further participation in the employer's retirement plan where the employee entered employment of any competitor); *Tweedle v Tweedle Litho Co,* 80 Mich App 418; 264 NW2d 9 (1978) (upholding forfeiture of profit sharing benefits where the employee engages in activities that compete with the employer); *Couch v Difco Lab Employees Trust,* 44 Mich App 44; 205 NW2d 24 (1972) (upholding forfeiture of all payments due under an employer profit sharing plan where the employee accepts employment by a competitor within a year).

II

Do the indemnity agreements constitute unenforceable contracts of adhesion? As noted earlier, the trial court answered this question in the affirmative and held it to be an additional reason for granting summary disposition in favor of defendants. We disagree.

In *Allen v Michigan Bell Telephone Co,* 18 Mich App 632, 637; 171 NW2d 689 (1969), this Court articulated a two-pronged test for determining whether a contract was one of adhesion:

(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable?

Even if the contract is adhesive under the first

prong, the challenged term is still enforceable if substantively reasonable and not oppressive or unconscionable. *Id.,* p 638.

> Thus, merely because the parties have different options or bargaining power, unequal or wholly out of proportion to each other, does not mean that the agreement of one of the parties to a term of a contract will not be enforced against him; if the term is substantively reasonable it will be enforced. By like token, if the provision is substantively unreasonable, it may not be enforced without regard to the relative bargaining power of the contracting parties. [*Id.,* p 638.]

See also *Stenke v Masland Development Co, Inc,* 152 Mich App 562, 573; 394 NW2d 418 (1986). Reasonableness is the primary consideration in determining whether a contract clause is enforceable. *St Paul Fire & Marine Ins Co v Guardian Alarm Co of Michigan,* 115 Mich App 278, 284; 320 NW2d 244 (1982).

In *Follmer, supra,* an antipiracy clause strikingly similar to the provisions set forth in the third paragraph of the instant indemnity agreements was found reasonable by our Supreme Court. There, as in the instant case, the defendant was an accountant who admitted that within three years of leaving the plaintiff's employment he provided accounting services to a former client of the plaintiff. *Follmer,* 420 Mich 397-398. The antipiracy provision in *Follmer* provided in relevant part:

> "If, at any time within three (3) years after the termination or expiration hereof, Employee directly or indirectly services any client of Employer, he shall immediately purchase from Employer the goodwill associated with such client. In view of the difficulty in evaluating goodwill, it is

hereby agreed that the price of said goodwill shall be measured by the billable time spent by Employer and/or his employees in servicing such client during the 12-month period immediately preceding the date of termination or expiration extended at the billing rates in effect as of such date, but in no event, less than Two Thousand ($2,000.00) Dollars for each such client. It is mutually agreed that this amount will be paid by the Employee to the Employer over a five (5) year period of time with 20% down and the balance in sixty equal payments, including interest at 8½% per annum." [*Follmer,* 420 Mich 398, n 1.]

The trial court granted the plaintiff's motion for summary judgment, holding that this provision was neither unreasonable nor in violation of MCL 445.761; MSA 28.61. The Court of Appeals affirmed. *Follmer,* 420 Mich 399. On appeal, the Supreme Court not only upheld the provisions, but also commented on the need for them, particularly in the accounting and insurance professions:

An employee who possesses confidential information regarding a client is in a position to exploit that information for the purpose of obtaining the patronage of the client after leaving his employer's service. In view of the risks presented by an employee's knowledge of confidential customer information, and the perceived unfairness of allowing the employee to gain a competitive advantage by using it, an employer may protect himself from the unauthorized use of such confidential information by obtaining an agreement that, in the event the employee obtains the patronage of former clients, he will be obliged to pay the employer according to an agreed formula.

An employer is not, however, entitled to enforce a contractual provision which would require an employee to pay for using information labelled confidential which is not in fact confidential. Accordingly, in each case, a determination must be

made whether the employee has in fact had access to confidential information which provides him with an unusual opportunity to obtain the patronage of particular clients of his former employer.

\* \* \*

An agreement requiring an employee to pay for using confidential information in obtaining the patronage of his employer's customers does not violate [MCL 445.761; MSA 28.61].

Whether such an agreement is characterized as in restraint of trade or not, it must be reasonable to be enforced. To the extent such an agreement provides reasonable protection for the confidential information of the employer, it does not violate the statute and is enforceable. To the extent it goes beyond what is reasonably necessary for the protection of confidential information, it is unenforceable. The courts thus must scrutinize such agreements and enforce them only to the extent they are reasonable.

In determining whether the provisions of such an agreement are reasonable; the courts consider three interests: the public interest, the former employee's interest in continued employment, and the interest of the employer. Of particular importance is the client's interest in being free to form business relationships with whomever he pleases.

An agreement that unduly limits a former employee's freedom to go into business for himself or another, or extracts an excessive price for the privilege of doing so, is unreasonable and hence unenforceable. A court may, however, enforce such a contractual provision to the extent that it is reasonable by substituting a reasonable amount for the amount provided in the agreement. [*Follmer,* 420 Mich 406-409.]

We disagree with the respected trial court's opinion that *Follmer* is distinguishable in that the contract there did not contain an agreement not to

compete "as does the contract in the instant case."
As pointed out at some length in part I of this
opinion, the language in the second paragraph of
the indemnity agreements, upon which the trial
court relied, is not an agreement not to compete.
Instead, it is only an agreement not to contact or
solicit or perform services for "a client *of the
Partnership.*" By no stretch of the imagination
may this be construed as an agreement not to
compete.

Likewise, we disagree with the second reason
assigned by the court for distinguishing *Follmer,*
namely, that the agreement in *Follmer* provided
that the sum due was for the purchase of "good-
will" and allowed payment to be made over a five-
year period, whereas the instant agreement de-
mands one hundred percent of the amount due be
paid on demand. The *amount* of payment in both
*Follmer* and the instant case was established by
identical formulas (billings to the firm's former
client during the twelve months immediately pre-
ceding the defendants' termination). Because the
amount of payment is the same in each case, we
find no reason why designating the amount paid as
"goodwill" in one instance and as a "penalty" in
the other makes any material difference. Further,
in *Follmer's* companion case, *Nolta-Quail-Sauer &
Associates v Roche,* the Court upheld a payment
which, like the instant case, called for payment on
demand. *Follmer,* 420 Mich 398, n 1.

Given the similarity of the antipiracy clauses in
*Follmer* to the clauses in the instant case, and
having found no meaningful distinction between
*Follmer* and the instant case, we conclude that the
challenged provisions in the indemnity agreements
in the instant case are reasonable and neither

oppressive nor unconscionable. Ergo, it necessarily follows that the contracts are not adhesive.[2]

Accordingly, the January 18, 1989, order of the trial court is reversed, and the matter is remanded for further proceedings. The trial court shall make a determination of whether the third paragraphs of the indemnity agreements containing the penalty payment provisions are reasonable and whether defendants had access to confidential information which they used to obtain the patronage of former clients of Rehmann, Robson. If, on remand, plaintiff makes the requisite showing, the provisions of the agreement designed to compensate plaintiff for defendants' use of confidential information in obtaining the patronage of plaintiff's former clients may be used to the extent that it is reasonable.

Reversed and remanded. No costs, neither party having yet prevailed in full.

[2] Defendants ask this Court, by way of a supplemental brief, to find that the indemnity agreements are void under the operation of MCL 445.761; MSA 28.61 by adopting the reasoning set forth in *Grant-Thornton v Kaplan,* unpublished opinion per curiam of the Court of Appeals, decided January 11, 1990 (Docket No. 111632). We decline to do so for two reasons. First, *Grant-Thornton,* as an unpublished opinion of this Court, has no precedential value. Second, the panel in *Grant-Thornton* failed to address *Follmer.*