NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0167n.06
Filed: March 2,2006

Case No. 05-1217

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LAURA SHERROD, )
                                           )
    Plaintiff-Appellant, )
                                           )     ON APPEAL FROM THE
    v. )     UNITED STATES DISTRICT
                                           )     COURT FOR THE EASTERN
GENZYME CORPORATION, )     DISTRICT OF MICHIGAN
                                           )
    Defendant-Appellee. )
                                           )
                                           )
_____ )
                                           )
                                           )

BEFORE: BOGGS, Chief Judge and BATCHELDER, Circuit Judges; WEBER[*], District Judge.

     **ALICE M. BATCHELDER, Circuit Judge.** Plaintiff-Appellant Laura Sherrod appeals the district court's dismissal on summary judgment of her case against Defendant-Appellee Genzyme Corp. ("Genzyme"), in which she alleged that Genzyme violated two Michigan statutes by requiring that she sign a non-compete agreement as a condition of her employment. The district court rejected this argument, ruling that the statutes in question did not generally ban non-compete agreements. Because a more recent statute authorizes reasonable non-compete agreements, and because cases subsequent to the enactment of the statutes cited by Sherrod evince a general approval of non-compete agreements, we AFFIRM the judgment of the district court dismissing Sherrod's

        [*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

statutory claim.

The facts of the case are not in dispute. Sherrod began her employment with Genzyme in 1997 and, following a brief absence, was offered re-employment by letter dated March 29, 2002. The offer included the following condition: "Please know that your offer of employment is contingent upon your signing of this Agreement and your continued willingness to abide by its terms." The "Agreement" referenced in the offer is the Genzyme Corporation Agreement, which included a restrictive covenant in which the employee agreed not to work for certain employers for a period of one year after ceasing employment with Genzyme. Sherrod signed the Agreement on March 30, 2002, and was thereafter employed in Michigan as a clinical account executive. In September, 2003, Genzyme terminated her employment. Following her termination, Sherrod was offered employment by entities she was prohibited from working for by virtue of the restrictive covenant in the Agreement. Genzyme refused to release Sherrod from the Agreement.

Sherrod then filed the instant suit in district court, claiming that Genzyme's requirement that she sign the non-compete agreement as a condition of employment violated M.C.L. §§ 408.478(1) and 750.351. M.C.L. § 408.478(1) provides for the following:

> An employer, agent or representative of an employer, or other person having authority from the employer to hire, employ, or direct the services of other persons in the employment of the employer shall not demand or receive, directly or indirectly from an employee, a fee, gift, tip, gratuity, or other remuneration or consideration, as a condition of employment or continuation of employment. This subsection does not apply to fees collected by an employment agency licensed under the laws of this state.

M.C.L. § 750.351 states, in relevant part:

> Any employer or agent or representative of an employer or other person having authority from his employer to hire, employ, or direct the services of other persons in the employment of said employer, who shall demand or receive directly or indirectly from any person when in the employment of said employer, any fee, gift

2

or other remuneration or consideration . . . in consideration or as a condition of such employment or hiring or employing any person to perform such services for such employer or of permitting said person to continue in such employment is guilty of a misdemeanor.

Genzyme, in turn, notes that M.C.L. § 445.774a(1) specifically authorizes non-compete agreements like the one contained in its Agreement. M.C.L. § 445.774a(1) provides for the following:

An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

Sherrod's case, which generally disregards M.C.L. § 445.774a(1), centers on her contention that §§ 408.478 and 750.351 prohibit employers from conditioning employment upon the signing of a non-compete agreement (or any other kind of "consideration"). She cites *Sands Appliance Services, Inc. v. Wilson*, 615 N.W.2d 241 (Mich. 2000) in support of her position. We find *Sands* inapposite because it did not deal with a non-compete agreement. It involved instead a tuition contract, under which an employer charged an employee $50 per week for certain job training. *Id.* at 243-44. The employee argued that § 408.478 rendered the tuition contract an illegal "fee, gift, tip, gratuity, or other remuneration or consideration, as a condition of employment or continuation of employment." The court noted the very broad definition of "consideration" provided by the Sixth Edition of Black's Law Dictionary and held that the tuition contract's payment arrangement fell within that definition, thus violating § 408.478. *Id.* at 247. The court also relied on *ejusdem generis*, a doctrine of statutory interpretation that mandates that general words must be interpreted in light

3

of any specific words that precede them. *Id*. Accordingly, the court construed the general term "consideration," which followed the specific terms "fee, tip, gratuity, or other remuneration," to include the employee's tuition payments to the employer. *Id*. Finally, the court wrote that § 408.478's legislative purpose was to "prohibit the selling of jobs," and "to prevent kickbacks or payments of any kind to an employer in return for employment or its continuation." *Id.* Because the tuition payment was a payment made by an employee to an employer as a condition of continued employment, it violated the statute. *Id*.

Sherrod argues that the *Sands* court adopted a broad, traditional definition of "consideration" and that a similar definition should apply to the restrictive covenant contained in Genzyme's Agreement. But even if we found Sherrod's argument persuasive, we could not adopt it here because Michigan enacted the aforementioned M.C.L. § 445.774a(1) in 1987. It provides that "[a]n employer may obtain from an employee" a reasonable non-compete agreement. Because the statute was enacted after § 750.351 and § 408.478, which became law in 1931 and 1978, respectively, it supersedes them to the extent of any conflict. Consequently, M.C.L. § 445.774a(1)'s specific authorization of non-compete agreements trumps the other statutes' inclusion of such agreements within their general prohibition on "consideration" as a condition of employment. *See Travelers Ins. v. U-Haul of Mich., Inc.*, 597 N.W.2d 235, 239 (Mich. Ct. App. 1999) ("[T]he rules of statutory construction . . . provide that a more recently enacted law has precedence over the older statute. This rule is particularly persuasive when one statute is both the more specific and the more recent." (internal citation omitted)). We also note that, although Michigan courts have not dealt with the specific question of whether §§ 408.478 and 750.351 prohibit non-compete agreements as a condition of employment, they have consistently indicated that reasonable non-compete agreements

4

are enforceable. *See Bristol Window & Door, Inc. v. Hoogenstyn*, 650 N.W.2d 670 (Mich. Ct. App. 2002) (enforcing non-compete agreement, and noting long history of enforcing such agreements in Michigan); *Rehmann, Robson & Co. v. McMahan*, 466 N.W.2d 325 (Mich. Ct. App. 1991) (per curiam) (enforcing a narrowly drawn non-compete agreement, even though it was governed by the pre-Michigan Antitrust Reform Act law, which was less favorable for non-compete agreements); *Compton v. Joseph Lepak, D.D.S., P.C.*, 397 N.W.2d 311 (Mich. Ct. App. 1986) (noting that the Michigan Antitrust Reform Act, even prior to the addition to it of § 445.774a, enacted a policy in Michigan whereby reasonable non-compete agreements are enforceable).

Despite this wealth of case law, Sherrod points out that no Michigan case has directly addressed whether §§ 408.478 and 750.351 prohibit non-compete agreements as a condition of employment. Furthermore, she asserts that because § 445.774a(1) only authorizes non-compete agreements between "employers" and "employees," it does not apply to her; she was merely a job applicant when Genzyme required her to sign the Agreement. Sherrod's argument is fallacious. While a literal reading of "employee" and "employer" might bring about Sherrod's desired result under § 445.774a, applying a similarly literal reading to §§ 408.478 and 750.351– the statutes on which she depends– would make them inapplicable to this case. Section 408.478 prohibits "employer[s]" and their agents from "demand[ing] or receiv[ing], directly or indirectly *from an employee*, a fee, gift, tip, gratuity, or other remuneration or consideration, as a condition of employment or continuation of employment," (emphasis added), and § 750.351 prohibits "employer[s]" and their agents from making similar demands on any "person" or "employee" "when in the employment of said employer." We can think of no reason why the word "employee" should mean one thing in one statute, and something else in two others. Finally, the broad interpretation

5

of §§ 408.478 and 750.351 urged by Sherrod would make *any* consideration required of an employee–such as the mere promise to show up at work or wear a uniform–an unlawful requirement. We cannot sanction such an absurd result. *See People v. Fetterley*, 583 N.W.2d 199, 206 (Mich. Ct. App. 1998) (noting that literal constructions of a statute that produce unreasonable results inconsistent with the statute's purposes are to be avoided).

Accordingly, we **AFFIRM** the district court's grant of summary judgment in favor of Genzyme.