TROSTEL, LTD v DEPARTMENT OF TREASURY

Docket No. 255630. Submitted December 6, 2005, at Lansing. Decided
January 17, 2006, at 9:05 a.m.

Trostel, Ltd., a Wisconsin corporation, brought an action in the Court of
Claims against the Department of Treasury, seeking enforcement of
a voluntary disclosure agreement (VDA) and the return of single
business taxes it had paid under protest. The plaintiff had entered
into the VDA with the defendant in 1999 pursuant to MCL 205.30c,
which established a voluntary disclosure program for taxpayers that
had not filed single business tax returns but should have done so after
the defendant changed its nexus standards for imposing those taxes.
The VDA relieved the plaintiff of certain single business tax liability.
The defendant moved for summary disposition, arguing that the
court lacked subject-matter jurisdiction and that the VDA was void *ab
initio* because the plaintiff had not met the eligibility requirements
for the voluntary disclosure program when the VDA was executed.
The court, Paula J. Manderfield, J., denied the defendant's motion
and granted the plaintiff summary disposition. The defendant ap-
pealed by delayed leave granted.

The Court of Appeals *held*:

1. The trial court had jurisdiction to hear the case. The plaintiff
alleged a breach of its contract with the defendant, while the
defendant argued that the plaintiff's action was an untimely claim for
a tax refund. Because the issue involves a tax administered by the
defendant, the 90-day period of limitations for tax appeals under
MCL 205.22(1) applies, rather than the six-year period of limitations
for a contract action. Nonetheless, the plaintiff's complaint was
timely because it was filed within 90 days after the defendant's
adverse decision on the plaintiff's claim concerning the VDA.

2. The trial court did not err by granting summary disposition for
the plaintiff. When the parties entered into the VDA, the plaintiff was
not eligible to do so because it did not meet the definition of a
"nonfiler" set forth in the original version of MCL 205.30c, which
stated that a nonfiler was a person that had never previously filed tax
returns for the tax at issue. After the plaintiff paid the single business
taxes and penalties at issue in this case, as requested by the
defendant when it learned that the plaintiff had previously filed

single business tax returns, the Legislature amended the definition of "nonfiler" to mean a person that had not filed such a return for any period beginning December 31, 1988. Under this definition, the plaintiff qualified for the voluntary disclosure program. The Legislature intended the amendment of MCL 205.30c to be retroactive to the date that the voluntary disclosure program was originally enacted. Thus, the VDA was valid following the amendment, and the plaintiff is entitled to the benefits of the voluntary disclosure program.

Affirmed.

TAXATION — SINGLE BUSINESS TAX — VOLUNTARY DISCLOSURE AGREEMENTS.

The 2001 amendment of the definition of "nonfiler," which provides that a "nonfiler" is a person that has not filed a tax return for a particular tax for periods beginning after December 31, 1988, for purposes of determining eligibility for a voluntary disclosure program and an accompanying agreement relieving the nonfiler of certain liabilities under the revenue act, is retroactive and applies to a voluntary disclosure agreement entered into before the Legislature enacted the amendment (MCL 205.30c).

*Warner Norcross & Judd LLP* (by *Valerie P. Simmons* and *Daniel P. Ettinger*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ross H. Bishop*, Assistant Attorney General, for the defendant.

Before: HOEKSTRA, P.J., and NEFF and DAVIS, JJ.

NEFF, J. In this single business tax (SBT) case involving a voluntary disclosure agreement (VDA) under MCL 205.30c, defendant appeals by delayed leave granted an order of the Court of Claims denying defendant's motion for summary disposition, granting summary disposition for plaintiff, and awarding plaintiff damages of $154,502. We affirm.

I

Effective July 1, 1998, the Michigan Legislature amended the revenue act to add MCL 205.30c, which

established a voluntary disclosure program for taxpayers that had not filed SBT returns but should have done so following a change in nexus standards released by defendant. 1998 PA 221. Under the program, eligible taxpayers could file returns and pay taxes and interest for a limited "lookback period" without the imposition of penalties.[1]

MCL 205.30c permitted defendant to enter into a VDA with a taxpayer that had not previously filed a single business tax return and had "a filing responsibility under nexus standards issued by the department after December 31, 1997," for the lookback period of not more than four years. Former MCL 205.30c(1)(a) and (10)(a).[2] By entering into a VDA and voluntarily reporting single business tax, an eligible "nonfiler" was relieved of "any tax, delinquency for a tax, penalty, or interest covered under the agreement for any period before the lookback period identified in the agreement." Former MCL 205.30c(4)(a), now MCL 205.30c(5)(a). Although the 1998 enactment defined a "nonfiler" as a person who had *never* filed a return for the particular tax being disclosed, in 2001 the Legislature amended the act to define "nonfiler" in relevant part as, "beginning July 1, 1998, a person that has not filed a return for the particular tax being disclosed for periods beginning after December 31, 1988." 2001 PA 168.

At issue in this case is whether a VDA entered into by the parties in 1999 with the mutual understanding that plaintiff met the VDA "nonfiler" eligibility requirement is enforceable although the parties subsequently determined that plaintiff only qualifies as a "nonfiler" under

---

[1] See the compiler's note to MCLA 205.30c.

[2] Section 30c has been amended, resulting in a renumbering of these subsections, which are now found at MCL 205.30c(2)(a) and (15)(a).

the Legislature's 2001 amended definition of "nonfiler." We hold that because the 2001 amendment expressly provides a definition of "nonfiler" "beginning July 1, 1998," the amended definition encompasses plaintiff, which signed an agreement in 1999, and, therefore, the parties' VDA is enforceable.

II

The underlying facts in this case are undisputed. Plaintiff is a Wisconsin corporation that manufactures and sells rubber seals for use in the automotive industry. Plaintiff's activities in Michigan involve solicitation of sales, collection on accounts, providing technical assistance and service to its customers, and handling customer complaints.

Following the enactment of MCL 205.30c, plaintiff voluntarily came forward to begin filing Michigan SBT returns and remitting SBT payments. In April 1999, the parties entered into a VDA under which plaintiff agreed to:

(1) Register for the single business tax and begin filing returns and remitting single business tax in the state of Michigan for tax periods beginning on or after December 1, 1998.

(2) File single business tax returns due for the tax periods beginning December 1, 1995, through November 30, 1998.

(3) Make its books and records for periods before December 1, 1998, available for audit by defendant.

In return, defendant agreed:

(1) Not to assess plaintiff for any potential single business tax liabilities, including penalties and interest, for periods before December 1, 1995.

(2) Not to assess plaintiff for any penalties relating to single business tax liabilities or returns due for periods before December 1, 1998.

(3) Not to bring any criminal action against plaintiff for failure to report or remit single business tax for periods before December 1, 1998.

In January 2000, defendant discovered that plaintiff had filed SBT returns from 1976 through 1981[3] and informed plaintiff that the VDA was invalid because plaintiff did not qualify as a "nonfiler." Defendant subsequently demanded that plaintiff file SBT returns and pay taxes for the tax periods from 1989 through 1994. On August 3, 2000, defendant sent plaintiff notices of "intent to assess," billing plaintiff for $154,502 in taxes for the tax years 1990 through 1995 and approximately $200,000 in penalties and interest. Plaintiff responded with a letter requesting an informal conference regarding the billed taxes, which defendant granted by letter dated September 19, 2000. Defendant's letter explained in part the appeal process for tax disputes, but the record is unclear concerning whether any appeal ensued and, if so, whether there was any formal resolution.[4] In January 2001, plaintiff filed returns and paid the taxes under protest.

---

[3] Plaintiff filed SBT returns in Michigan from 1976 through 1981, but ceased filing in 1981 following termination from employment of its resident employee salesperson in Michigan and its conclusion that, notwithstanding the termination, filing was not required under the then-existing nexus standards because the salesperson's activities were limited to mere solicitation of sales.

[4] The record indicates that communications continued between the parties, and on November 22, 2000, State Treasurer Mark Murray sent plaintiff a letter in response to plaintiff's letter to then-Governor Engler concerning plaintiff's request for voluntary disclosure. Murray's letter reiterated that plaintiff did not qualify as a "nonfiler" and was therefore liable for payment of taxes and interest for the fiscal years 1990 through 1995.

Subsequently, in late 2001, the Legislature amended MCL 205.30c, effective November 27, 2001, to change the definition of "nonfiler." The amended definition provided:

"Nonfiler" for a particular tax means, beginning July 1, 1998, a person that has not filed a return for the particular tax being disclosed for periods beginning after December 31, 1988. Nonfiler also includes a person whose only filing was a single business tax estimated tax return filed before January 1, 1999. [Former MCL 205.30c(11)(b), now MCL 205.30c(15)(b).]

In light of the new definition, plaintiff requested that defendant honor the VDA and refund the taxes paid under protest. Defendant declined.

On November 5, 2002, plaintiff filed this suit in the Court of Claims to enforce the April 1999 VDA and seeking a return of the SBT it paid for the 1990 through 1995 tax years. Defendant filed a motion for summary disposition, challenging the court's jurisdiction on the ground that plaintiff's appeal was not filed within the 90-day statutory period for seeking a tax refund under MCL 205.22 and arguing, additionally, that the VDA was void *ab initio* because plaintiff did not qualify for the voluntary disclosure program. Plaintiff maintained that MCL 205.22 was inapplicable because this was an action to recover on a contract.

Following a hearing, the court found in favor of plaintiff. The court concluded that the 2001 amendment was intended by the Legislature to have retroactive effect, to be applied back to the date on which the original statute took effect, July 1, 1998:

The Court agrees with Plaintiff that the retroactive intent is apparent from the remedial nature of the amendment by its express language. It's clear from a plain reading of the statute that the phrase "beginning July 1st, 1998," [sic] demon-

strates the [L]egislature[']s express intent to apply the definition retroactively back to the date the original statute was enacted, and the interpretation is further reinforced by the [L]egislature's stated intent in enacting [MCL] 205.30c in 1998, which was to allow nonfilers to participate in the voluntary disclosure program.

So to adopt the position advocated by the Defendant in this matter, the Court would have to render the words "beginning July 1st, 1998" [sic] completely nugatory or just surplusage.

So in this case, we have express language in the—as to the retroactivity of the amendment. We're dealing with an amendment to clarify a statutory definition and not a repeal of a statute, and we're dealing with a voluntary disclosure agreement that is, at worst, voidable but is not wholly void at its inception.

Accordingly, the court concluded that the VDA entered into by the parties was fully enforceable from the time it was entered into because plaintiff qualified as a nonfiler for purposes of MCL 205.30c. The court rejected defendant's statute of limitations argument as moot. The court entered an order denying defendant's motion for summary disposition and granting plaintiff's motion for summary disposition.

III

Defendant moved for summary disposition pursuant to MCR 2.116(C)(4) (lack of subject-matter jurisdiction). The trial court denied defendant's motion and granted summary disposition for plaintiff, MCR 2.116(I)(2). This Court reviews de novo a trial court's grant of summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

IV

Defendant initially argues that the Court of Claims lacked jurisdiction to hear this case because plaintiff's

action is an appeal of an adverse tax decision, which must be filed within the 90-day period set forth in MCL 205.22. Consequently, because the action was untimely filed, the Court of Claims lacked subject-matter jurisdiction. We disagree. The existence of jurisdiction is a question of law that this Court reviews de novo. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 160; 610 NW2d 613 (2000).

Plaintiff filed this action alleging a breach of contract. Defendant insists that this is in fact a claim for a tax refund and posits January 27, 2000, when it initially notified plaintiff that the latter did not qualify for the voluntary disclosure program, as the date commencing the limitations period. We are unpersuaded by defendant's argument.

Under MCL 208.80(1), the single business tax is administered as provided by the revenue act, MCL 205.1 *et seq.* MCL 205.22(1) states that "[a] taxpayer aggrieved by an assessment, decision, or order of the department may appeal . . . to the tax tribunal within 35 days, or to the court of claims within 90 days after the assessment, decision, or order." However, an action to recover damages for breach of contract may be brought within six years of the time the claim first accrues. MCL 600.5807(8). The amendment to MCL 205.30c that changed the definition of "nonfiler" did not state that the statute of limitations otherwise applicable to tax actions arising from Department of Treasury decisions was inapplicable, and plaintiff cites no authority under which contract law supersedes tax law in this regard. Therefore, we conclude that MCL 205.22 is applicable.

Defendant argues that the statutory 90-day period commenced January 27, 2000, when it notified plaintiff that it did not qualify for the voluntary disclosure

program and thus was liable for single business taxes from 1990 through 1995. However, it is clear from the evidence that neither party considered the January 27, 2000, letter a final decision on this matter. In a letter from defendant to plaintiff dated September 19, 2000, defendant acknowledged plaintiff's request for an informal conference on the alleged tax liability, which defendant granted. The September 19, 2000, letter asked plaintiff to "[p]lease disregard any final assessment you may receive on this matter before a review of your account is complete or an informal conference is held."[5] The letter also stated that if the tax division could not resolve this matter, plaintiff's account would be returned to the legal and hearings division for assignment to a referee. Given that the matter was not yet decided on January 27, 2000, we find defendant's argument without merit.

Defendant provides no argument based on any other date or alleged assessment, decision, or order that would commence the running of the statutory 90-day period. Sections 21 and 22 of the revenue act, MCL 205.21 and 205.22, govern the procedure for assessment of tax due and appeals from those assessments.[6] *Montgomery Ward & Co, Inc v Dep't of Treasury*, 191 Mich App 674,

---

[5] The letter further informed plaintiff that it was not obligated to pay a contested portion of an assessment for which it had filed an appeal until after plaintiff had received a "final assessment, decision, or order" from defendant.

[6] MCL 205.21(2)(d) and (e), in particular, set forth procedures for a decision following an informal conference, which pursuant to subsection 2(f) is final and subject to appeal as provided in MCL 205.22:

> (d) Upon receipt of a taxpayer's written notice, the department shall set a mutually agreed upon or reasonable time and place for the informal conference and shall give the taxpayer reasonable written notice not less than 20 days before the informal conference. The notice shall specify the intent to assess, type of tax, and tax year that is the subject of the informal conference. . . .

679; 478 NW2d 745 (1991). It appears that this matter remained unresolved through the time that the Legislature amended the definition of "nonfiler," which amendment ultimately became the basis for this action in the Court of Claims.

Plaintiff presented a letter, dated July 29, 2002, informing defendant that plaintiff would seek enforcement of the 1999 VDA to compel defendant to return SBT wrongfully paid for tax years 1990 through 1995. Plaintiff also presented defendant's letter in response, dated August 22, 2002, stating that the parties' VDA had been nullified, and that the new definition of "nonfiler" did not apply in plaintiff's case because it was not retroactive. Viewing defendant's letter as an adverse decision in connection with plaintiff's claim based on the 2001 amendment of MCL 205.30c, plaintiff's complaint would be timely. Plaintiff filed its complaint on November 5, 2002, within the 90-day period set forth in MCL 205.22(1). Under the circumstances, we conclude that the Court of Claims exercise of jurisdiction was proper.

V

Defendant argues that even if the Court of Claims had jurisdiction to hear this matter, the court erred in

(e) After the informal conference, the department shall render a decision and order in writing, setting forth the reasons and authority, and shall assess the tax, interest, and penalty found to be due and payable. . . .

(f) If the taxpayer does not protest the notice of intent to assess within the time provided in subdivision (c), the department may assess the tax and the interest and penalty on the tax that the department believes are due and payable. An assessment under this subdivision or subdivision (e) is final and subject to appeal as provided in section 22. . . . [MCL 205.21(2).]

determining that the VDA was a valid contract because plaintiff did not qualify as a "nonfiler" at the time the VDA was executed, and, therefore, the VDA was a nullity *ab initio*. Because the VDA was void at its inception, it could not be revived by the subsequent legislation amending the definition of "nonfiler."

There is no dispute that, because plaintiff had filed SBT returns for several years, it did not quality as a "nonfiler" and thus was not eligible to participate in the voluntary disclosure program at the time the parties executed their VDA. The question, then, is whether the VDA was valid following the amended definition.

Statutory interpretation is a question of law that this Court reviews de novo. *Cherry Growers, supra* at 166.

> The first step in discerning the intent of the Legislature is to consider the language of the statute. The language must be read according to its ordinary and generally accepted meaning. If the language of the statute is clear and unambiguous, judicial construction is not permitted.
>
> If reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. The court should apply a reasonable construction to best accomplish the Legislature's purpose. [*Id.* at 166-167 (citations omitted).]

As originally enacted, the voluntary disclosure program limited participation to a "nonfiler," which was defined as "a person that has never filed a return for the particular tax being disclosed." Former MCL 205.30c(10)(b). The 2001 amendment changed the definition of "nonfiler" to provide:

> "Nonfiler" for a particular tax means, beginning July 1, 1998, a person that has not filed a return for the particular

tax being disclosed for periods beginning after December 31, 1988. Nonfiler also includes a person whose only filing was a single business tax estimated tax return filed before January 1, 1999. [Former MCL 205.30c(11)(b), now MCL 205.30c(15)(b).]

There can be little doubt that the Legislature intended the amendment to be retroactive to the date that the voluntary disclosure program was originally enacted because it expressly made the new definition effective "beginning July 1, 1998," although the amendment was not enacted until November 2001. MCL 205.30c(15)(b). The Court of Claims correctly concluded that to find otherwise would render the language meaningless.[7] *Tiger Stadium Fan Club, Inc v Governor*, 217 Mich App 439, 457; 553 NW2d 7 (1996) (a construction rendering some part of a statute nugatory or surplusage should be avoided).

We reject defendant's argument that the VDA was void from the inception and therefore cannot be "revived" by the amendatory legislation. The statutory scheme for voluntary disclosure sets forth the eligibility requirements, one of which is that the taxpayer be a nonfiler. Pursuant to the amended act, beginning July 1, 1998, a nonfiler is defined as a person that has not filed a return for the particular tax being disclosed for periods beginning after December 31, 1988. It is undisputed that plaintiff is a nonfiler under the amended definition. We find no basis for recognizing the retroactive amendment of the definition, but refusing to apply it to the VDA entered into with plaintiff. It would make little sense, after plaintiff has voluntarily self-reported and paid taxes under the voluntary disclosure statutory scheme, to impose the tax liability on plaintiff, but deny

---

[7] Defendant fails to offer any other explanation for the language "beginning July 1, 1998."

the benefits of voluntarily self-reporting. By applying the definition as expressly stated, we merely give effect to the statutory scheme as intended.

We find *Compton v Joseph Lepak, DDS, PC*, 154 Mich App 360; 397 NW2d 311 (1986), relied on by defendant, inapposite. In *Compton*, this Court addressed a covenant not to compete, a contract provision that was at the time agreed to by the parties " 'declared to be against public policy and illegal and void' " pursuant to MCL 445.761.[8] *Compton, supra* at 365, quoting the statute. Unlike *Compton*, this case does not involve an *illegal* contract between private parties; instead, it involves a statutory scheme for a government program for voluntarily disclosure of unpaid taxes, which benefits both taxpayers and the state.

Affirmed.

---

[8] MCL 445.761 was subsequently repealed. *Compton, supra* at 362.